**Armando LONGORIA, Appellant,**

v.

**Jamie Lee GRAHAM, Appellee.**

**No. 14–99–01083–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

April 12, 2001.

Scot Gibbons Dollinger, Baytown, for appellants.

David L. Miller, Luke Charles Carrabba, Houston, for appellees.

Panel consists of Justices YATES, WITTIG, and FROST.

## OPINION

WITTIG, Justice.

This is an appeal of a no-evidence summary judgment involving a multi-car, interstate highway accident. Traveling on I-45 North, appellee sideswiped a disabled car parked on the shoulder, lost control, crashed into a concrete barrier, and blocked traffic. Appellee's wreck forced appellant's emergency stop of his car behind appellee's and appellant was subsequently struck by another vehicle. The dispositive issue in determining whether the trial court erred in granting summary judgment is causation. We will reverse and remand.

## Background

Viewed in the light most favorable to appellant, the non-movant, the record reveals the following facts: Appellant was traveling northbound on I-45 near Houston at approximately 1:00 a.m. This section of I-45 was a two-lane highway, meaning two lanes flowed in each direction. There was intermittent construction on the road and, in places, the two lanes in each direction were bounded by concrete barriers, with no shoulder to pull off of. The weather was clear and dry. Appellant was driving with his wife in the front seat. His speed was approximately 65 miles per hour when he noticed a white Subaru automobile, driven by appellee, pass him. He estimated the speed of the Subaru to be about 75 to 80. The posted speed limit was 55 in the construction zone. Minutes later, a small white pickup that had just

passed appellant, swerved and slammed on his brakes, and somehow managed to escape contact with the Subaru. Appellant then saw that the Subaru had crashed into a concrete barrier. Appellant slammed on his brakes and was able to stop about 15 to 20 feet from the Subaru. Appellant stated he was unable to pass in his vehicle because appellee's Subaru had come to a rest sideways and blocked the road between the concrete barriers, which enclosed this section of road. According to appellant, after appellee's car came to a rest from the initial impact, appellee unsuccessfully began attempting to move her car, rocking it back and forth, perpendicular to I-45. The combination of the concrete barriers on both the right and left edges of the highway, together with appellee's vehicle, in effect, created a cow herder's dream, a boxed canyon.

The undisputed cause of accident, was that appellee clipped a disabled red Cadillac parked on the side of the road and lost control of her car.[1] The owner of the Cadillac had put on his hazard lights hours before, however, appellee disputes they were on at the time of the accident.

Appellant had a brief conversation with his wife, then exited his vehicle to see if the 18-year-old driver needed help and to assist in moving her vehicle to an open area, thus reopening the freeway. When appellant observed that someone was already helping appellee, he turned to return to his vehicle. About that time, another driver, Tonya Downing, slammed into appellant's vehicle, pushing his vehicle into him, causing serious injuries. According to appellant, the amount of time from when his car stopped and he was injured was between one and two minutes.[2]

---

1. The disabled Cadillac was parked off the road and on a shoulder before the lanes became bounded by the barriers.

2. Multiple witnesses, including appellant gave wide ranging estimates of time, from as little as one minute to as much as 18 minutes.

Appellant's testimony is controverted in several respects. Other witnesses stated that appellee's automobile did not block the roadway and that numerous vehicles, even an 18–wheeler, were able to pass the wreckage at some unknown time. Appellant conceded that vehicles were eventually able to get through, but asserted that was not the case for him at the time he exited his vehicle. Additionally, there was an opinion making an allegation that Downing, the driver of the vehicle that injured appellant, was intoxicated. Contrary evidence showed that no blood or breath samples were taken from her, and she was neither charged nor arrested for such an offense.

Appellant sued appellee under common law negligence. After discovery was conducted, appellee moved for summary judgment under the no-evidence rule, arguing that appellant could not show duty, breach and causation. The trial court granted the motion and appellant now brings this appeal.

### Discussion

▪▪▪ We review a no-evidence summary judgment under the same legal sufficiency standard as a directed verdict. *Lampasas v. Spring Ctr., Inc.*, 988 S.W.2d 428, 432 (Tex.App.—Houston [14th Dist.] 1999, no pet.). We view the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). We will sustain a no-evidence point if the proffered evidence is so weak as to create no more than a "mere surmise or suspicion" of a vital fact, less than a scintilla of evidence exists because such evidence lacks probative force, and in legal effect, is no evidence at all. *Kindred v. Con/Chem., Inc.*, 650 S.W.2d 61, 63 (Tex.1983). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995).

Appellee argues that she owed no duty to appellant under authority of *Bell v. Campbell*, 434 S.W.2d 117 (Tex.1968), which we discuss at some length below. In *Bell*, the primary issue the court addressed was causation, not duty. *Id.* at 118 ("the controlling question is one of causation"). As in *Bell*, it appears that this case boils down to proximate cause or, more specifically, whether the first accident had already run its course and come to rest when the second accident occurred, injuring appellant. Thus we place our focus there.[3]

Before we turn to that issue, though, we first note that appellee requests us to disregard appellant's several statements in the summary judgment record that he was unable to get by appellee. She posits that the evidence to the contrary is so overwhelming that his evidence amounts to no more than a mere scintilla. Though we agree that appellant's evidence may be strongly controverted, his statements that he was unable to get by appellee's vehicle are clear and unequivocal, thus create far

---

**3.** Appellee also raised a no-duty issue in her no-evidence motion for summary judgment. On appeal, she argues no duty existed because "any alleged negligent actions were too attenuated to constitute proximate cause of Longoria's injuries." Thus, she conflates the duty/proximate cause issue. Further, appellee's arguments under her duty point address the issue of foreseeability. As such, though our opinion focuses on proximate cause, our analysis likewise applies to appellee's duty argument. *Mellon Mortgage Co. v. Holder*, 5 S.W.3d 654, 659 (Tex.1999) (foreseeability analysis is the same for both duty and proximate cause) (plurality opinion).

more than "mere suspicion or surmise." Essentially, appellee is requesting us to resolve a fact issue, which we are not permitted to do. We are constrained to review the evidence as mandated by law: in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Havner*, 953 S.W.2d at 711. As such, we find appellant has proffered competent summary judgment evidence sufficient to raise a fact issue whether he was trapped by appellee's vehicle. *See Crye*, 907 S.W.2d at 499

In support of her contention that the accident had run its course as a matter of law, appellee relies heavily on *Bell v. Campbell*, 434 S.W.2d 117 (Tex.1968). In *Bell*, two vehicles collided on a U.S. highway. A trailer attached to one of the vehicles disengaged and overturned in the north lane of the highway. Three passers-by then attempted to help remove the trailer from the highway, when they were struck and killed by another automobile, the driver of which had ignored or failed to see a person flashing a warning signal. The estates of the passers-by sued the owner of the trailer in negligence. On appeal, the Texas Supreme Court agreed with the factual determination by a jury that the negligence of the owner of the trailer did not constitute legal causation. The *Bell* court stated "[t]he active and immediate cause of the second collision . . . was an entirely independent agency. . . . All forces involved in or generated by the first collision had come to rest, and no one was in any real or apparent danger therefrom." *Id.* at 120. The court further held that the defendant's negligence "did not actively contribute in any way to the injuries. . . . It simply created a condition which attracted [plaintiffs] to the scene. . . ." *Id.* at 122.

We observe that while the facts in *Bell* and this case are similar in part, there are critical differences. Taking as true all evidence favorable to the non-movant and disregarding all contrary evidence, appellee's negligence did not merely create a condition which "attracted" appellant to the scene. Rather, appellee's negligence created a dangerous situation which trapped appellant, continuously exposing him to a second collision. Unlike *Bell*, appellee's negligence created a boxed canyon effect that afforded only the highly dangerous escape of backing against traffic on an interstate. Thus, appellee's negligence "actively contributed" to appellant's peril in the critical time frame.

Appellee also relies on *Union Pump v. Allbritton*, 898 S.W.2d 773 (Tex.1995). There, a fire occurred at a Texaco facility, which had been caused by a machine manufactured by Union Pump. Allbritton, a Texaco employee, assisted in extinguishing the fire, which was put out approximately two hours later. When leaving the scene, Allbritton walked over a pipe rack which was wet with water or foam. She slipped on the rack and injured herself. Allbritton stated that the route she took over the pipes was the shorter route but not the safer route. Allbritton admitted she chose the less-safe route because she had a "bad habit" of doing so. *Id.* at 774. Relying on the above-quoted language in *Bell*, the court held that the negligence of Union Pump was too remote to constitute proximate cause. *Id.* at 776. Again, the facts of *Union Pump* are materially different than ours in that the plaintiff in that case was not ensnared by the danger created by the defendant. Further, the facts in *Union Pump* present an almost "*Palsgrafian*" situation of attenuated circumstances, vis-a-vis our case, where the events are direct and proximate.[4]

4. Appellee cites our case of *Green v. GS Roof-* ing Prods. Co., Inc., 928 S.W.2d 265 (Tex.

We further note there are at least several cases factually similar to ours from other courts of appeals distinguishing *Bell*, *Union Pump*, or both, and finding the existence of a fact question of proximate cause. *E.g.*, *J. Wigglesworth Co. v. Peeples*, 985 S.W.2d 659, 664 (Tex.App.—Fort Worth 1999, pet. denied) (holding that by negligently causing his truck to become disabled on an interstate highway and block traffic, defendant was a legal cause of subsequent collision. Evidence "clearly" established that the defendant's negligence and the effects thereof, *i.e.*, the traffic backup, had not come to a rest); *J.D. Abrams, Inc. v. McIver*, 966 S.W.2d 87, 94 (Tex.App.—Houston [1st Dist.] 1998, pet. denied) (defendant highway contractor negligently restricted lanes of traffic, creating slowdowns or stoppages, and causing rear-end collisions. Held that effects of its negligence [though negligence apparently had been committed hours earlier] had not ended and caused the accident in a much more direct sequence than in *Bell* and *Union Pump*); *Almaraz v. Burke*, 827 S.W.2d 80, 82 (Tex.App.—Fort Worth 1992, writ denied) (defendant negligently lost control of vehicle, leaving it sideways and disabled in the overpass. Distinguishing *Bell*, the court held defendant was a proximate cause of the second collision, which occurred ten minutes after the first, because defendant could reasonably foresee his wrecked vehicle being cause of subsequent collision before preventative action could be taken).

We believe the cited cases from our sister courts of appeals are materially on point and are faithful to the guiding principles of law provided by the supreme court. An important common thread that exists in *J. Wigglesworth, J.D. Abrams*, and *Almaraz* that does not exist in *Bell* and *Union Pump* is that the initial negligence of the defendants continued to pose an active danger from which the plaintiffs were unable to extricate themselves, thus allowing a jury to reasonably find the defendant bore a substantial portion of the responsibility for the injuries caused by the subsequent collision. We believe these cases embody the principle stated by the supreme court that: "[t]he negligence must … be a substantial factor in bringing about the plaintiff's harm. The word 'substantial' is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility …." *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex.1991) (quoting RESTATEMENT (SECOND) OF TORTS § 431 cmt. a (1965)).

Explicitly in *Union Pump* and inferentially in *Bell*, the defendants' negligence did not leave plaintiffs without a means of escaping the dangerous condition that led to their injuries. In both cases, the plaintiffs could have avoided the effects of the initial negligence, thus those effects no longer actively contributed to the subsequent injuries. *Bell*, 434 S.W.2d at 122. Additionally, the events leading to the injuries in those cases were attenuated, and thus not reasonably foreseeable. In *Union Pump*, the fire had occurred at least

App.—Houston [14th Dist.] 1996, no writ). Though *Green* is ostensibly similar to our case in that it involves a highway collision, it is distinguishable on a crucial material fact. That is, in reaching our holding we stressed that the vehicle which had created a hazardous road condition "was *not* obstructing the roadway." *Id.* at 268 (emphasis in original). As such, contrary to the case at bar, the plaintiff there was *not* trapped by the vehicle that had blocked the roadway minutes (not hours) earlier.

two hours earlier, had been extinguished, the plaintiff was leaving the scene, and chose to take the shorter route which she acknowledged was more dangerous. And as the *Almaraz* court stated, "the two drivers in the initial accident in *Bell* could not reasonably foresee that a drunk driver[5] would come along later, ignore the flashlight signaling danger, and cause injury to third parties attempting to remove the trailer from the highway." *Almaraz*, 827 S.W.2d at 82.

In our case, the events leading to appellant's injuries were both more direct and foreseeable. Appellee negligently ran into the parked car and, as in *J. Wigglesworth*, *J.D. Abrams*, and *Almaraz*, blocked the highway from passage while traffic dangerously continued to flow from behind. Similarly, as a direct result of appellee's negligence, appellant was prevented from proceeding to safety.[6] The foreseeable consequences of sideswiping a car and rendering one's own vehicle perpendicular to interstate traffic in a restricted area surely includes further collisions, so long as the danger remained. We therefore find that there is a material fact issue as to whether appellee's negligence actively contributed to and was a substantial factor in the second collision.[7]

Appellee also claims that because Downing, the driver of the vehicle who collided into appellant's vehicle, was intoxicated, her actions constituted an intervening cause. We disagree. We will assume someone's intoxication would constitute an intervening force or superseding cause as a matter of law. Here, however, there patently remains a fact issue whether Downing even had a drink, much less that she was intoxicated Therefore, we hold that if the summary judgment was based on intervening force or superseding cause, such was unwarranted.

We sustain appellant's issues. The judgment of the trial court is reversed and remanded.

---

**5.** *Bell* involved a jury verdict in favor of the defendant in which the supreme court assumed from the record and verdict the driver was drunk. We cannot make that assumption.

**6.** Appellee claims that, as a matter of law, we should find no proximate cause because appellant should not have left his vehicle; rather, he should have waited inside until the road was cleared. We disagree. The record does not disclose how appellant's leaving the car would have had any effect on whether the second collision occurred. Had he remained in the car, we cannot conjecture he would not have suffered injuries when his car was struck. Hence, appellee's attempted condemnation of appellant's good Samaritan conduct fails.

**7.** We note that in oral argument, appellee placed much emphasis on the *Bell* court's statement that "[n]o one would have been injured if there had not been a second collision." *Bell*, 434 S.W.2d at 120. As applied, this statement was true. However, taken to the extreme and removing context, we cannot agree with appellee that there is never causation when there is a second collision. We find no support for such a sweeping supposition. As such, we do not regard the court's statement as a holding to be applied to every circumstance, but rather as emphasis on the previously stated finding that the forces of the first collision had come to rest and that no one remained in any danger *as a result* of the first collision.