Jimmie REINICKE, Individually and as Legal Representative of the Estates of Karen Reinicke, Deceased, Max L. Reinicke, Deceased, and Derrick A. Reinicke, Deceased, Appellants,

v.

AEROGROUND, INC., Appellee.

No. 14–02–00680–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 22, 2005.

Rehearing Overruled Aug. 4, 2005.

---

of Aeroground, Inc. ("Aeroground") on the grounds that the trial court erred in: (1) entering the JNOV because there was legally sufficient evidence to support the jury's verdict; and (2) excluding from evidence (i) a post-accident drug test for marijuana and valium of Aeroground's truck driver and (ii) the opinions of Texas Department of Public Safety ("DPS") accident reconstructionists. We affirm.

## Background

In this particularly tragic case, Reinicke's wife, Karen, and their two sons, Max and Derrick, were killed by a fire resulting from a highway traffic collision (the "accident"). Reinicke brought this wrongful death and survival action against Aeroground (and others who are not parties to this appeal). At trial, the jury apportioned 50% of the negligence to Aeroground and awarded Reinicke damages totaling $23.25 million. However, the trial court ultimately concluded that there was no evidence that any negligence by Aeroground was a proximate cause of the accident, granted Aeroground's motion for JNOV, and entered a take-nothing judgment.

David A. Carp, Brad Beers, Houston, and John V. Elick, Bellville, for appellants.

Charles W. Hurd, Jerry L. Rios, Reagan W. Simpson, Houston, Gregory Alan Scott, Dallas, for appellees.

Panel consists of Justices FOWLER, EDELMAN, and SEYMORE.

## PLURALITY OPINION

RICHARD H. EDELMAN, Justice.

In this wrongful death and survival action, Jimmie Reinicke, individually and as legal representative of the Estates of Karen, Max, and Derrick Reinicke (collectively, "Reinicke") appeals a judgment notwithstanding the verdict ("JNOV") in favor

## JNOV

Reinicke's first issue contends that the trial court erred in granting the JNOV because there was legally sufficient evidence that Aeroground's negligence proximately caused the accident.

### Standard of Review

A trial court may grant a JNOV if there is no evidence to support one or more of the jury findings on issues necessary to liability. *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex.2003). To determine whether there is no evidence to support a jury verdict (and thus uphold the JNOV), we view the evidence in a light that supports

the challenged finding and disregard all evidence and inferences to the contrary. *Id.* If more than a scintilla of evidence supports the finding, the jury's verdict must be upheld. *Wal–Mart Stores, Inc. v. Miller,* 102 S.W.3d 706, 709 (Tex.2003).

More than a scintilla of evidence exists when the evidence enables reasonable minds to differ in their conclusions. *See Tarrant Reg'l Water Dist. v. Gragg,* 151 S.W.3d 546, 552 (Tex.2004). Conversely, evidence that creates only a mere surmise or suspicion is no more than a scintilla and, thus, no evidence. *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex.2004). Similarly, an inference that is stacked only upon other inferences, rather than direct evidence, is not legally sufficient evidence. *See Marathon Corp. v. Pitzner,* 106 S.W.3d 724, 728 (Tex.2003).

### Overview of Negligence Grounds

In this case, an Aeroground 18–wheel tractor-trailer rig driven by Randy Peavy ran out of fuel while heading eastbound on Highway 290 and was parked on the shoulder, out of the lane of traffic. Peavy notified Aeroground, and it sent another driver, David Rodriguez, with another tractor with which to pull Peavy's tractor away from the trailer and then pull the trailer to Aeroground's yard. After the first tractor had been moved away from the trailer, but before the second tractor was connected to it, Karen's van drifted off the roadway, collided with the rear corner of the parked trailer, went back onto the roadway, collided with both a Murco 18–wheel rig and the concrete wall dividing the highway, then caught on fire. Reinicke contends that the accident was caused by Aeroground's negligence in the following respects: (1) Peavy allowed his rig to run out of fuel during rush hour on a busy highway, causing it to be placed in a dangerous position on the shoulder; (2) Peavy failed to put out emergency warning triangles to alert oncoming traffic that his rig was disabled and not moving; and (3) Rodriguez, an untrained driver who had a history of backing incidents, had backed the second tractor into the roadway in the path of Karen's van immediately before the collision.

### Negligence in Placing the Rig on the Shoulder

A person who creates a dangerous condition on premises, including a public highway, can be liable for injuries it causes even though he is not in formal control of the premises at the time of the injury.[1] However, in this case, the charge submitted to the jury (the "charge") contained only the elements pertaining to a negligent activity theory of recovery and not the additional elements required for a finding of liability under the independent theory of a defective condition of premises. *See generally* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—MALPRACTICE, PREMISES & PRODUCTS PJC 65.1 (2003).[2] Therefore, the

---

**1.** *City of Denton v. Page,* 701 S.W.2d 831, 835 (Tex.1986); *Strakos v. Gehring,* 360 S.W.2d 787, 795–96 (Tex.1962) (recognizing that the law places upon a person who creates a dangerous condition on a public highway a duty to warn of the condition); *see Lefmark Mgmt. Co. v. Old,* 946 S.W.2d 52, 54 (Tex.1997); *Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 912 (Tex.1997).

**2.** In addition to the ordinary negligence elements of failure to use ordinary/reasonable care, proximate cause, and damage, premise defect elements include: (1) the existence of a condition that posed an unreasonable risk of harm; and (2) actual or constructive knowledge of the condition by the defendant. *See Keetch v. Kroger,* 845 S.W.2d 262, 264 (Tex. 1992). Because negligence and premise defect are independent theories of recovery, these additional elements cannot be deemed found where they have not been submitted in

charge will support a recovery for an injury that was a contemporaneous result of an activity actually going on at the time of the injury, but not an injury resulting from a condition that was previously created by an activity.[3]

Reinicke's first alleged ground of negligence, causing the trailer to be placed in a dangerous position along the highway, occurred while driving and parking the rig. That activity had ended when the tractor ran out of gas, well before the accident occurred. Therefore, to whatever extent Aeroground's negligence in running out of gas and positioning the rig on the shoulder created a dangerous condition, the negligent activity charge submitted in this case will not support a finding of liability for

common law negligence or premise liability for failing to: (1) exercise reasonable care in putting the trailer there; (2) warn of that condition; or (3) make it reasonably safe.[4]

### Statutory Duty to Warn

Despite that a premise defect theory was not submitted to the jury, the charge would support liability for Reinicke's second alleged ground of negligence, the failure to put out emergency warning triangles, because an independent duty to warn was imposed by statute, and the charge contained a negligence *per se* instruction that "the law requires the placement of emergency warning devices behind a disabled commercial motor vehicle within 10 minutes of becoming disabled."[5]

the jury charge. *Clayton W. Williams, Jr., Inc. v. Olivo,* 952 S.W.2d 523, 529 (Tex.1997).

3. *See Timberwalk Apartments, Partners, Inc. v. Cain,* 972 S.W.2d 749, 753 (Tex.1998); *Clayton W. Williams,* 952 S.W.2d at 529; *Keetch,* 845 S.W.2d at 264.

4. *See Clayton W. Williams,* 952 S.W.2d at 527, 529–30 (holding that a jury finding on negligent activity would not support a recovery for injury resulting from thread protectors left on the ground); *Keetch,* 845 S.W.2d at 264 (holding that a negligent activity theory would not support liability for a slippery condition previously created by spraying).

Based on the comment to Pattern Jury Charge instruction 65.2, the dissent contends that a negligent activity charge was sufficient to support liability against Aeroground in this regard because the additional *Corbin* elements apply only as against a possessor, owner, or occupier of land. The dissent thereby infers from this PJC comment that a different and lesser standard of care applies to defendants who create dangerous conditions on property they do not own than applies to defendants who own or control the premises on which dangerous conditions exist.

This contention ignores the fundamental principle that negligence and premise defect are independent theories of recovery, rather than mere standards of care within a

single theory that could differ among classes of defendants. In addition, it is refuted in that even a trespasser can be subject to liability for a condition he creates on land only if the *Corbin* elements are present, *i.e.,* the condition poses an unreasonable risk of harm to others and the trespasser should recognize it as such. *See* RESTATEMENT (SECOND) OF TORTS § 381 (1965). Therefore, reading the comments to PJC 65.1 and 65.2 together, it is apparent that the PJC 65.2 instruction applies to the negligent activities of parties other than owners and occupiers who do not create the dangerous condition on the premises but whose concurrent negligent activity is also a cause of the injury for purposes of determining proportionate responsibility. However, as a practical matter, the lack of a premise defect submission in the charge had no actual effect on the outcome of the case because of the independent statutory duty to warn, discussed in the following section.

5. Unlike a premise defect theory, a negligence per se theory considers whether there is an unexcused violation of a statute without regard to other considerations bearing on the reasonableness of the defendant's conduct, such as whether there is an unreasonably dangerous condition or the defendant's awareness of it. *See, e.g., Carter v. William Sommerville & Son, Inc.,* 584 S.W.2d 274, 278 (Tex.1979).

A negligence *per se* theory requires a showing of proximate cause just as does an ordinary negligence theory. *See Mo. Pac. R.R. Co. v. Am. Statesman,* 552 S.W.2d 99, 103 (Tex.1977). In this case, the charge defined "proximate cause" as a cause that "produces an event, and without which ... [it] would not have occurred." In this regard, the vital distinction is whether the negligent act: (1) set in motion a natural and unbroken chain of events that led directly to the injury;[6] or (2) merely furnished a condition that made it possible for the injury to instead result from a separate act of negligence. *IHS Cedars Treatment Ctr. v. Mason,* 143 S.W.3d 794, 799 (Tex.2003). Similarly, if the evidence shows only a mere *possibility* that the plaintiff's injuries arose from the defendant's negligence, or if it shows more than one equally probable cause, for any of which the defendant was not responsible, then the evidence is legally insufficient to support a finding of causation. *See Hart v. Van Zandt,* 399 S.W.2d 791, 792–93 (Tex.1965). Although a finding of cause-in-fact may be based on either direct or circumstantial evidence, it cannot be supported by mere conjecture, guess, or speculation. *Marathon Corp. v. Pitzner,* 106 S.W.3d 724, 727 (Tex.2003). Therefore, the causation evidence must show that the injury would not have occurred if the negligence had not occurred.[7]

In this case, it is undisputed that the rig was parked on the shoulder of the highway, out of the traveled lane of traffic, and that the accident occurred during daylight hours under dry weather conditions and clear visibility. Had Karen's van remained in the roadway, as would ordinarily be expected of a driver in the exercise of reasonable care in such driving conditions, there is no evidence that any mishap would have occurred. Conversely, there is no evidence that the mere presence of the rig on the shoulder or the absence of warning triangles could have itself reasonably compelled a driver who was maintaining a safe distance, speed, lookout, and the like to leave the roadway. Nor is there any evidence that any movement of Karen's van before, or while, drifting out of the lane of traffic toward the trailer on the shoulder was sudden or accompanied by any application of her brakes or abrupt steering change.[8] Under these circumstances, the cause of the accident was whatever other event or condition caused the van to leave the roadway in the first place. Regardless whether that event or condition was an external factor or physical incapacity that was beyond Karen's control, or some other occurrence that was within her control, there is no evidence that the presence of warning triangles would have changed its effect in any way, let alone prevented the accident. Therefore, although putting out emergency warning triangles would unquestionably have been better than not doing so, any conclusion that the accident would not have occurred if they had been used would be wholly speculative. There is thus no evidence that the failure to put out warning triangles was a cause of the

---

**6.** *See Hart v. Van Zandt,* 399 S.W.2d 791, 793 (Tex.1965).

**7.** *See Excel Corp. v. Apodaca,* 81 S.W.3d 817, 821–22 (Tex.2002) (holding evidence legally insufficient to prove that injury was caused by unsafe work practices where it failed to show that the injury would not have occurred if different practices had been followed); *Southwest Key Program, Inc. v. Gil-Perez,* 81 S.W.3d 269, 274–75 (Tex.2002) (holding evidence legally insufficient to prove that injury was caused by the lack of protective gear where it failed to show that injury would not have occurred if protective gear had been worn).

**8.** Thus, contrary to the dissent, there is no evidence to support an inference that Karen was startled by a sudden perceived danger.

accident.[9]

### Backing the Second Tractor into the Roadway

Regarding Reinicke's third alleged ground of negligence, backing the second tractor into the roadway in Karen's path, it is undisputed that Rodriguez would have had to back his tractor up to the trailer to connect to it and that doing so would have required his tractor to move partway into the outside lane of traffic. However, there is no direct evidence that Rodriguez ever actually progressed to the point of backing his tractor into the roadway. Although the Murco truck driver, who was traveling ahead of Karen's van, applied his brakes and moved to an inner lane as he approached the Aeroground rig, these actions would have been prudent just by reason of the rig being on the shoulder, and thus do not support an inference that there was a tractor in the roadway that precipitated them. Similarly, although there was evidence that Rodriguez was in a hurry to return the trailer to the Aeroground yard, this fact is also not probative of whether he had actually backed his tractor onto the roadway when the accident occurred. As noted above, there is no evidence that any movement of Karen's van before, or while, drifting out of the lane of traffic toward the trailer on the shoulder was sudden or accompanied by any application of her brakes or abrupt steering change.

Because the evidence shows no more than a mere possibility that the accident could have been caused by Rodriguez backing his tractor into the roadway, and at least an equal probability that the van left the roadway for other possible reasons, any conclusion regarding causation can be reached only by speculation or stacking inferences. *See Marathon,* 106 S.W.3d at 729–30. Under these circumstances, there is no evidence that the accident was caused by Aeroground's negligence, and Reinicke's first issue is overruled.

### Exclusion of Expert Opinion Testimony

Reinicke's third issue challenges the trial court's exclusion of the opinion testimony of two DPS accident reconstructionists, Manning and Davis, that Aeroground caused the wreck. Expert opinion testimony that is conclusory or speculative is legally insufficient to prove the stated conclusion. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.,* 136 S.W.3d 227, 232–33 (Tex.2004). Therefore, to constitute some evidence, an expert opinion must be supported by facts in evidence[10] such that there is not too great an analytical gap between the data and the opinion offered. *Kerr–McGee Corp. v. Helton,* 133 S.W.3d 245, 254 (Tex.2004).

In this case, the facts that Manning and Davis relied upon included: (1) the respective locations of the various vehicles after the accident; (2) the location and length of skid marks from the Murco rig relative to the locations of the trailer and tractors, the calculated location at which Karen's van collided with the Murco rig after hitting the trailer, and the points at which the van struck the concrete wall dividing the highway; and (3) various other matters occurring after the collision of Karen's van

9. Reinicke's second issue challenges the exclusion of drug test evidence pertaining to Peavy's alleged negligence in creating the dangerous condition and/or failing to warn of it. Because of our conclusions that the charge does not support liability with regard to the condition, and there is no evidence of causation, we need not otherwise address the second issue.

10. *Marathon,* 106 S.W.3d at 729.

with the trailer. However, we can find no portion of the record at which either expert explained how (*i.e.*, the sequence of logical steps by which) a conclusion can be drawn from these facts regarding what caused Karen's van to veer off the road in the first place. Nor is it apparent, without such an explanation, how any such conclusion logically follows from the body of data they relied upon. Under these circumstances, the expert opinions were conclusory and/or speculative and would not have constituted evidence to support a finding that Aeroground's negligence caused the accident. Therefore, Reinicke's third issue is overruled.

Because Reinicke's issues do not show any evidence to support the finding of causation against Aeroground, they fail to demonstrate error in granting the JNOV, and we need not address Aeroground's cross-points. Accordingly, the judgment of the trial court is affirmed.

FOWLER, J., concurring.

SEYMORE, J., dissenting.

WANDA McKEE FOWLER, Justice concurring.

I disagree in part and agree in part with the plurality opinion we issue today. I disagree that negligent activity and premises liability theories apply to this case. Instead, I agree with the dissent that the controlling case law permitted the trial court to submit this case to the jury under a general negligence theory of liability. However, I agree with the decision to affirm the trial court's judgment notwithstanding the verdict because Mr. Reinicke failed to raise a fact issue on proximate cause. For this reason, I concur in the result reached by the plurality opinion.

**The trial court properly submitted this case under general negligence principles**

This case arose out of the tragic car accident that occurred when Mrs. Reinicke's van collided with an Aeroground tractor-trailer rig that was parked on the shoulder of Highway 290. For the reasons that follow, I believe the trial court properly submitted the case to the jury using a general negligence charge.

The plurality characterizes this case as one of premises liability rather than ordinary negligence because Aeroground's allegedly negligent acts, including running out of gas and parking the rig on the shoulder, had ended before the accident occurred. In order for Mr. Reinicke to recover for these actions, the majority would require him to proceed under a premises liability theory based upon a dangerous condition Aeroground created on the shoulder of Highway 290. But, I believe this case is controlled generally by ordinary negligence principles, and specifically by proximate causation. Case law from the Texas Supreme Court itself compels this conclusion.

In *Bell v. Campbell*, the Court was faced with a similar factual situation. 434 S.W.2d 117, 118 (Tex.1968). While driving along a highway, Bell came upon a traffic accident. *Id.* A trailer—originally attached to a truck involved in the collision—had disengaged and lay overturned in one lane of the highway. *Id.* Bell and others stopped and attempted to remove the trailer from the highway. *Id.* at 119. As Bell worked to move the overturned trailer, another car struck the trailer, injuring Bell. *Id.* Faced with the dilemma of deciding whether the initial accident caused Bell's injuries, the Texas Supreme Court did not turn to premises liability theory. Mentioning premises liability not once, the Court relied instead on ordinary negligence principles and specifically focused on

causation saying, "the controlling question is one of causation." *Id.* at 118. And, while the initial accident made the subsequent collision possible, that fact was not the primary indicator of causation. Rather, the primary indicator was whether "all forces involved in or generated by the first collision had come to rest and no one was in any real or apparent danger therefrom." *Id.* at 120. Thus, almost forty years ago, the Texas Supreme Court confirmed that general negligence principles apply to a setting like the one here. *See id.* at 118–123.

Only ten years ago, the Court reaffirmed this approach in *Union Pump Co. v. Allbritton.* 898 S.W.2d 773, 774 (Tex. 1995). Allbritton sued the manufacturer of a pump that started a fire at a chemical company's facility, saying that she would not have been injured if the pump had not started the fire. *Id.* Allbritton, one of the chemical company's employees, had responded to the fire. *Id.* After the fire was extinguished, she fell from a pipe rack that was wet from substances used to douse the fire. *Id.* Again, the case proceeded under a general negligence theory and again, the Texas Supreme Court mentioned premises liability theory not once. *Id.* at 774–77. Again, when faced with an accident that occurred *after* the initial negligent activity had ended, the Court looked to whether the forces generated by the fire had come

to rest by the time Allbritton was injured and thus, whether as a matter of law, the forces were "too remote to constitute legal causation."[1] *Id.* at 774.

In short, then, in neither *Bell,* nor *Union Pump* (nor *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470 (Tex.1991) for that matter), did the Court turn to premises liability theory. Instead, it looked to general negligence principles and specifically to proximate causation. That is what we also must do.[2]

**The trial court properly granted judgment notwithstanding the verdict in Aeroground's favor**

Thus, as the Texas Supreme Court did in *Bell* and in *Union Pump,* to resolve the issue before us we must turn to proximate causation and consider if the actions and omissions of Aeroground that the Reinickes complain of—running out of gas and parking the rig on the shoulder—"had run their course and were complete." *Bell,* 434 S.W.2d at 122. The evidence in the trial below was undisputed that "no one was in any real or apparent danger therefrom." *Id.* at 120. As one eye witness testified, Aeroground's "truck was way off the side of the road.... The third lane was clear." Many cars passed the trailer without hitting it. To hit the trailer, Mrs. Reinicke's van had to go off the road onto

---

1. In holding that the trial court properly granted the defendant's motion for summary judgment, the Court held Allbritton had not shown the proximate cause required to recover on her negligence claims, nor the producing cause required to recover on her strict liability claim. *Union Pump,* 898 S.W.2d at 774–76.

2. This court has followed this approach before. *See Longoria v. Graham,* 44 S.W.3d 671, 672 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (analyzing accident that occurred when plaintiff's car sideswiped a disabled car parked on the shoulder under general negli-

gence principles and stating the dispositive issue was causation); *see also State v. San Miguel,* 981 S.W.2d 342, 344–45 (Tex.App.-Houston [14th Dist.] 1998) (op. on reh'g), *rev'd on other grounds,* 2 S.W.3d 249 (Tex. 1999) (finding trial court did not err in submitting general negligence, rather than premise defect, theory when case involved the placement of a barricade device along the side of a highway and rejecting the assertion that "the choice between a negligence and premises defect charge turns solely on whether the injury results from a contemporaneous human act or a condition of property").

the shoulder. In fact, when the van hit the trailer, it was moving back toward the third lane of traffic, after having left the lane and traveled onto the shoulder. Certainly, the presence of Aeroground's trailer on the shoulder of the highway furnished the condition that made this unthinkable accident possible; had the trailer not been there, the van might have returned to the third lane without incident. But, had the van not left the lane of traffic, it would have passed the trailer, as did many cars before it, without injury to it or its precious passengers. So, although the trailer created a condition that sealed the fate of the van and its passengers, it was only a remote cause. The van directly caused the accident by departing from its route in the third lane and moving onto the shoulder where the trailer lay, off the road. *Union Pump*, 898 S.W.2d at 776 ("Legal cause is not established if the defendant's conduct ... does no more than furnish the condition that makes the plaintiff's injury possible.").

The dissent understandably rejects this conclusion. All of us would like to place blame on someone for the unspeakable events that transpired. But the law will not allow us to do that in this case on these facts. No one knows why the van left the lane of traffic and drifted onto the shoulder several times before hitting the trailer. I think the key to this mystery is the manner in which the van left the road: it drifted off the road. It did not move in a jerky or sudden manner as if its occupants were startled by what they saw on the shoulder of the road. Rather, it moved out of its lane and onto the shoulder without any apparent concern over the trailer. In fact, there is no evidence in the record tending to prove that Aeroground's negligence, rather than any other factor, somehow caused the van to leave the lane and collide with the trailer. Without this evidence, we can only speculate and our spec-ulation—where any number of possible causes exist and none is more probable than another—cannot support the jury's affirmative finding on proximate cause. *See Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 728–29 (Tex.2003) (per curiam).

**Conclusion**

Because of this uncertainty over this tragic accident, I would hold that the trial court properly granted Aeroground's motion for judgment notwithstanding the verdict. *Contrast Longoria*, 44 S.W.3d at 674 (distinguishing *Bell* and *Union Pump*, and holding disabled car on shoulder *did* proximately cause injuries when it "created a boxed canyon effect" and the plaintiff was "ensnared by the danger created by the defendant").

CHARLES W. SEYMORE, Justice dissenting.

I respectfully dissent.

My colleague has raised an issue that was not raised or argued by either party on appeal. The plurality has concluded that the Reinickes were required to request issues or instructions calculated to establish Aeroground's liability for creating a dangerous condition on the premises in question. My colleague cites *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749 (Tex.1998), an apartment rape case, *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523 (Tex.1997), an oil well drilling employee fall case, and *Keetch v. Kroger Co.*, 845 S.W.2d 262 (Tex.1992), a grocery store slip and fall case to support this conclusion. None of the above cases support the conclusion that a plaintiff must plead, adduce evidence, and obtain affirmative findings relative to a defective condition of premises in order to establish liability for negligence against a defendant who was not, at the time of plaintiff's injury, an

owner, occupier or possessor of the premises.

The plurality fails to acknowledge that Aeroground was not an owner, occupier or possessor and did not exercise the right to control the subject premises during all times material to this suit. In a footnote, the plurality cites *City of Denton v. Page,* 701 S.W.2d 831, 835 (Tex.1986) and properly acknowledges that the law places upon a person who creates a dangerous condition on a public highway a duty to warn of the condition. This duty to warn does not arise out of ownership, possession or control of premises. It arises, in the instant case, from leaving a trailer on premises (shoulder of the highway) owned or controlled by the State of Texas. In *Page,* the court acknowledged that possession and control must generally be shown in premises liability cases. *Id.* at 835. Here, the plurality seems to rely on the *Page* court's reference, in dicta, to *Strakos v. Gehring,* 360 S.W.2d 787 (Tex.1962), which was cited for the proposition that a private person who creates a dangerous condition on premises may be liable even though he was not in control of the premises at the time of the accident.

In *Strakos,* the plaintiff was a motorist who sued a fence contractor after stepping into a posthole located along an original fence. *Id.* at 788–89. The fence contractor was no longer working in the area at the time of the injury. The court rejected the "accepted work" doctrine and concluded that a contractor is not immune from liability for creating a dangerous condition on property solely because his work has been completed. *Id.* at 790. Notably, the *Strakos* court did not discuss or conclude that the trial court was required to submit definitions, instructions or special issues predicated on the duties of an owner, possessor or occupier of premises prerequisite to establishing liability against the contrac-

tor who allegedly created the dangerous condition.

The plurality does not attempt to describe or explain the Reinickes' legal status relative to Aeroground and the purportedly defective premises. We are left to speculate whether the Reinickes are invitees, licensees or trespassers relative to Aeroground. Reliance on the plurality's analysis would require the trial court to propound a question such as the following: *Did Aeroground know, or in the exercise of reasonable care, should it have known about the unreasonable risk of harm posed by the trailer?* I respectfully submit that Aeroground's negligence, if any, is not measured by its knowledge of a dangerous condition. Aeroground's knowledge of the trailer's location on the shoulder and potential danger to others was an undisputed fact. Two of Aeroground's employees were on the scene, attempting to remove the trailer from the shoulder of the highway seconds before the fateful impact.

The mere fact that Aeroground left its trailer sitting on the State's right of way does not transmogrify Aeroground into a possessor, owner or occupier of the premises. *See Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 912 (Tex.1997) (acknowledging the difference between liability for one who controls premises versus one who creates a dangerous condition on premises). My colleague refers to a comment to Pattern Jury Charge 65.1 for the reader's edification regarding the differences between a jury charge for negligent activity versus defective condition of premises. COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX. PATTERN JURY CHARGES PJC 65.1 (2003). Notably, on the next page of this edition is PJC 65.2. *See id.* PJC 65.2. At the top of the page is the section topic: "PREMISES LIABILITY—DEFINITIONS & INSTRUCTIONS." *See id.* The caption

beside PJC 65.2 states as follows: "Negligence and Ordinary Care of Plaintiffs or of Defendants Other than Owners of Premises." *See id.* The definitions of "Negligence" and "Ordinary Care" with the exception of the precatory "Paul Payne" language are verbatim to the definitions submitted in the instant case. *See id.* Moreover, in "Accompanying definitions and instructions" under PJC 66.4, the editors recommend use of the definitions under PJC 65.2 "when the conduct of a contributorily negligent plaintiff or defendant who is not an owner or occupier of a premises is also to be considered by the jury." *See id.* PJC 66.4. In the same edition and under the same topic, the PJC 65.4 definition of "Proximate Cause" is verbatim to the definition in the instant case. *See id.* PJC 65.4. The Committee on Pattern Jury Charges recognizes what the plurality refuses to acknowledge: some defendants are exposed to liability for creating dangerous conditions on premises they do not own or control, and their standard of care is not the same as the defendant who owns or controls the premises.

It is axiomatic that negligence (negligent activity) occurs by *action* or *omission.* I submit that leaving the trailer parked on the shoulder and failing to timely place emergency warning devices falls under the negligent activity rubric as *omissions.* The *action* that falls under the negligent activity rubric would be preparing to back or backing the tractor down the highway shoulder. Notwithstanding the plurality's ruminations about the exact moment Aeroground's negligent activity ended, a tortfeasor's presence at the scene of an injury is not a prerequisite to establishing liability for negligence, including failure to warn. I respectfully submit that the plurality has gleaned and applied a rule which is not supported by the cited cases. Accordingly, I disagree with the plurality's analysis

and discussion of the negligent activity versus premise defect dichotomy because none of the defendants in this case owned or controlled the premises in question.

## Sufficiency of The Evidence

Relative to the Reinicke's first issue, this court must not only recite the proper standard of review for determining whether the trial court erred in granting a JNOV, it must view the evidence in a light that supports the challenged finding and disregard all evidence and inferences to the contrary. *Tiller v. McLure,* 121 S.W.3d 709, 713 (Tex.2003). We must sustain the first issue if reasonable minds could reach different conclusions regarding the evidence. *Tarrant Reg'l Water Dist. v. Gragg,* 151 S.W.3d 546, 552 (Tex.2004).

It is relatively undisputed that Aeroground's employee parked its trailer on the highway shoulder and did not timely warn of the potentially dangerous condition by placement of warning cones required under federal law. The unexcused violation of a penal statute constitutes negligence as a matter of law if such statute was designed to prevent injuries to a class of persons to which the injured party belongs. *Murray v. O & A Express, Inc.,* 630 S.W.2d 633, 636 (Tex.1982). In jury question number one, the trial court acknowledged the legal sufficiency of this undisputed evidence by instructing the jury on the statutory requirement for placement of warning devices along the roadway. After discussing the above undisputed evidence, the plurality concludes that the jury charge will not support recovery for an injury resulting from a condition that was "previously created by an activity." For the reasons stated above, I respectfully disagree. Accordingly, I would hold that there is more than a scintilla of evidence supporting assessment of

negligence against Aeroground for failure to warn.

## Proximate Cause

The more difficult issue for appellate resolution is whether there is more than a scintilla of evidence to support the jury's affirmative finding that Aeroground's negligence proximately caused injury and death to the Reinickes. Proximate cause requires both cause-in-fact and foreseeability. *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 755 (Tex.1975). Cause-in-fact means that the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred. *Texas and Pac. Ry. Co. v. McCleery*, 418 S.W.2d 494, 497 (Tex. 1967). Foreseeability is satisfied by showing that the defendant should have anticipated the danger created for others by its negligent act or omission. *Missouri Pac. R.R. Co. v. Am. Statesman*, 552 S.W.2d 99, 105 (Tex.1977). Similar to any other ultimate fact, proximate cause may be established with circumstantial evidence. *Farley*, 529 S.W.2d at 755.

Pursuant to Section 392.22(b)(2)(v) of the Federal Motor Carrier Safety Regulations, Aeroground was required to place at least three warning devices behind the trailer with the following spacing: 10 feet, 100 feet and 200 feet. 49 CFR § 392.22(b)(2)(v) (2000). Without referring to specific testimony or physical evidence in the record, the plurality concludes, there is no evidence that "failure to put out warning triangles was a cause of the accident." Apparently, the plurality discounts or does not fully appreciate the multiple benefits of warning devices by concluding that "the cause of this accident was whatever other event or condition caused the van to leave the roadway." I respectfully disagree with the rationale of the plurality. One primary purpose for warning devices is to provide the earliest possible warning to drivers that a vehicle is disabled. Placement of the warning devices at the required distances is pivotal to early warning that there is a hazard ahead; drivers should reduce speed and exercise caution. Such devices are calculated to reduce or eliminate any confusion regarding whether the disabled vehicle ahead is moving or stopped.

Immediately before the Reinicke vehicle struck the rear of Aeroground's trailer, Pena was traveling ahead of Mrs. Reinicke in the right or outer lane of traffic. Pena testified that he easily saw the Aeroground trailer from his high vantage point in the seat of a tractor and observed the Reinicke vehicle pass in the right (outer) lane immediately before it came into contact with the Aeroground trailer. Kurishi, who was traveling behind the Reinicke vehicle, testified that he did not see the Aeroground trailer ahead before it was struck by the Reinicke vehicle. Truck driver Pena testified that he changed from the right (outer) lane to the center lane of traffic as he approached the Aeroground trailer. If Kurishi could not see the Aeroground trailer until it was impacted by the Reinicke vehicle, the jury was permitted to infer that Mrs. Reinicke, traveling behind the Pena 18-wheeler, did not have an early opportunity to acknowledge or appreciate the potentially dangerous condition on the right shoulder until Pena's tractor and trailer moved left, into the center lane of traffic.

Aeroground's employee, Rodriguez, testified that Mrs. Reinicke's vehicle weaved off the shoulder, then back onto the third (outer) lane and back onto the shoulder, striking the trailer in the rear. Rodriguez's testimony is contradicted by Kurishi; however, after reviewing the entire record, this court is required to consider only the evidence and inferences that sup-

port the jury's findings and disregard all contrary evidence. *Lenz v. Lenz,* 79 S.W.3d 10, 19 (Tex.2002). This erratic movement is some evidence supporting a permissible inference that Mrs. Reinicke was startled by sudden perceived danger, a reaction that might reasonably have been avoided if the warning devices had been placed at the prescribed distance and location.

This circumstantial evidence coupled with other physical evidence, including presence or absence of skidmarks and physical location of all the vehicles on and off the highway, after the fiery collision, constitutes legally sufficient evidence to support a jury finding that Aeroground's failure to warn proximately caused injury and death to the Reinickes. In other words, a jury could reasonably conclude that "but for" the failure to place warning devices prescribed by law, the impact would not have occurred. *See Kerby v. Abilene Christian Coll.,* 503 S.W.2d 526, 528 (Tex.1973).

The foreseeability element of proximate cause is established when the plaintiff shows that the defendant should have anticipated the dangers its negligent act or omission created for others. *See Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex. 1992). However, foreseeability does not require a person to anticipate the precise manner in which injury will occur once he has created a dangerous situation through his negligence. *Id.* at 98. Here, one or more of Aeroground's employees verbally acknowledged the potential danger. Moreover, the danger associated with a disabled trailer on the shoulder of a major highway in Houston traffic, without placement of required warning devices, is undisputable.

Regarding the movement of the Reinicke vehicle immediately before impact, the plurality ignores our "no evidence"

standard of review by disregarding Rodriguez's testimony in favor of Kurishi's testimony. Moreover, the plurality fails to acknowledge the presumption in law that Mrs. Reinicke was exercising ordinary care during all times material to this action. *See Boaz v. White's Auto Stores,* 141 Tex. 366, 172 S.W.2d 481, 483 (1943). Admittedly, the presumption vanishes with Kurishi's testimony; however, a "no evidence" challenge should be denied if, after reviewing the entire record, the proffered evidence rises to a level that would enable reasonable minds to differ. *See Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex. 1994).

In conclusion, I would hold there is legally sufficient evidence to support the jury's determination that Aeroground's violation of Section 392.22(b)(2)(v) and failure to warn proximately caused injury and death to the Reinickes. *See* 49 CFR § 392.22(b)(2)(v) (2000). Accordingly, I respectfully dissent.