COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
  
 HOMELAND EXPRESS, L.L.C.,
 HOMELAND TRUCK LINES, TSATENAWA-NKOGO TRANSPORT, and ATSEKO TSATENAWA,
  
                             Appellants,
  
 v.
  
 TANIA SEALE and MATTHEW E. SEALE,
  
                            
 Appellees.
 
 
 §
  
 §
  
 §
  
 §
  
 §
  
 § 
  
 §
  
 §
 
 
  
  
  
 No. 08-10-00287-CV
  
 Appeal from the
  
 205th
 District Court
  
 of Culberson
 County, Texas
  
 (TC# 4643)
  
 
 
 
 
  
 
 
  
 
 
  
 
 


 

O
P I N I O N

            In this personal injury case, Homeland
Express, LLC, Homeland Truck Lines, Tsatenawa-Nkongo Transport, and Atseko
Tsatenawa (collectively Appellants) appeal the trial court’s judgment in favor
of Tania Seale and Matthew E. Seale.  For
the reasons that follow, we affirm.

FACTUAL
SUMMARY

            At approximately 6 a.m. on a winter morning,
while it was still pitch black and the traffic on the eastbound lanes of Interstate
10 was sparse, Atseko Tsatenawa parked his 18-wheel tractor-trailer on the shoulder
to investigate why the “check engine” light had come on and the engine had
begun overheating.  Although the shoulder
was approximately eleven feet wide and the rig approximately nine feet wide, Tsatenawa
failed to park completely within the shoulder. 
As a result, a portion of the trailer protruded into the right-hand lane
of the highway.  Tsatenawa failed to place
reflective warning devices behind the rig as a commercial driver must do when
parking on the shoulder of a roadway.

Some
ten to fifteen minutes later, Gary Dean Elrod and his 14-year-old grandson, Matthew
Seale, approached the parked rig as they traveled eastbound on I-10 in Elrod’s
van.  As Elrod grew closer, the driver of
a white pick-up truck with blue flames painted on the sides suddenly passed Elrod
and, just as quickly, changed lanes and cut in front of him.  Elrod swerved to the right onto the shoulder,
and, as he attempted to steer back into the right-hand lane of the highway,
clipped the left rear of the 18-wheeler with the van’s right-front bumper.  After sliding along the trailer’s side, the
van collided with the tires located on the rear axle of the tractor and came to
rest in front of and facing the tractor. 
Matthew, who was asleep during the accident, suffered severe injuries.

            Tania Seale, Matthew’s mother, filed
suit individually and on behalf of Matthew seeking damages and exemplary
damages under various theories of liability, including negligence/gross
negligence, respondeat superior, and negligent entrustment.  At trial, Jim Mallory, the Seales’ accident
reconstruction expert, testified that, regardless of why Elrod drove onto the
shoulder – whether as a result of having evaded a collision with the white
pick-up truck or having fallen asleep, as alleged by Appellants – the accident
would not have occurred had Tsatenawa not parked where he had.  The jury returned a verdict in favor of the
Seales, finding Appellants and Elrod negligent, determining that Appellants
were responsible for 70 percent of the accident and Elrod 30 percent, and
awarding Mathew approximately $2 million and Tania $34,000 in damages.

In
accordance with the jury’s determination of the percentage of responsibility and
its verdict, the trial court signed a judgment in favor of the Seales against Appellants,
awarding damages and prejudgment interest to the Seales and assessing costs
against Appellants.  Appellants timely
moved for a new trial, arguing, among other things, that the trial court erred
in excluding a police report showing that the 18-wheeler was legally parked, and
that the evidence was factually insufficient to support the jury’s finding that
they were negligent or that their acts and omissions were a proximate cause of the
accident.  Appellants also moved for
judgment notwithstanding the verdict on the basis that the evidence was legally
insufficient to support the jury’s finding that their acts and omissions were a
proximate cause of the accident.  These
post-trial motions were overruled by operation of law.

PROXIMATE
CAUSE

In
their first issue, Appellants challenge the sufficiency of the evidence to
support the jury’s finding that their acts and omissions were the proximate
cause of the accident.

Standard of Review

            In reviewing the legal sufficiency
of the evidence, we must consider the evidence in the light most favorable to
the verdict, and indulge every reasonable inference that would support it.  City of
Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005).  The evidence is legally sufficient if it would
enable fair-minded people to reach the finding under review.  Id.
at 827.  On the other hand, the evidence
is legally insufficient if: (1) there is a complete absence of evidence of a
vital fact; (2) the trial court is barred by rules of law or of evidence from
giving weight to the only evidence offered to prove a vital fact; (3) the
evidence offered to prove a vital fact is no more than a mere scintilla; or (4)
the evidence conclusively establishes the opposite of the vital fact.  King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003).  The evidence offered to prove a vital fact is
no more than a mere scintilla if it so weak as to do no more than create a mere
surmise or suspicion that a vital fact exists. 
Id.

In
reviewing the factual sufficiency of the evidence, we must consider and weigh
all the evidence and set aside the judgment only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.  Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986)(per curiam).  We do not engage in our own factual review.  Rather, the trier of fact is the “sole judge
of the credibility of the witnesses and the weight to be given their
testimony.”  McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986).  We may not substitute our judgment for that of
the trier of fact.  Walker v. Gutierrez, 111 S.W.3d 56, 63 (Tex. 2003).

Applicable Law

            To prevail on a common law negligence
claim, a plaintiff must plead and prove that the defendant’s negligence was the
proximate cause of the injury.  Doe v. Boys Clubs of Greater Dallas, Inc.,
907 S.W.2d 472, 477 (Tex. 1995).  To
establish proximate cause, a plaintiff must prove foreseeability and cause in
fact.  Id.  The test for cause in
fact is whether the negligent act or omission was a substantial factor in
bringing about the injury, without which the harm would not have occurred.  Id.  Cause in fact is not shown if the defendant’s
negligence did no more than furnish a condition that made the injury possible;
that is, even if the injury would not have occurred but for the negligence,
there is no legal cause if the connection between the negligence and the injury
is too attenuated or remote.  Id.  “The evidence must go further, and show that
such negligence was the proximate, and not the remote, cause of the resulting
injuries [and] justify the conclusion that such injury was the natural probable
result thereof.”  Carey v. Pure Distrib. Corp., 133 Tex. 31, 34, 124 S.W.2d 847, 849
(1939).  An injury is the natural
probable result of a defendant’s conduct and thus a substantial factor in
bringing about the injury if a reasonable person would “regard it as a cause,
using that word in the popular sense, in which there always lurks the idea of
responsibility . . . .”  Lear Siegler, Inc. v. Perez, 819 S.W.2d
470, 472 (Tex. 1991), quoting
Restatement (Second) of Torts § 431 cmt. a (1965).

Legal Sufficiency

            We begin by evaluating whether a
reasonable juror could ascribe to Tsatenawa responsibility for causing the
accident by parking the rig where he did and failing to place reflective
warning devices behind it.  In so doing,
we are mindful that there may be more than one proximate cause of a plaintiff’s
injuries and that the issue of proximate cause is usually a question of fact to
be resolved by a jury.  Del Lago Partners, Inc. v. Smith, 307
S.W.3d 762, 774 (Tex. 2010); Lear Siegler,
Inc., 819 S.W.2d at 471; see Farley
v. MM Cattle Co., 529 S.W.2d 751, 756 (Tex. 1975); Clark v. Waggoner, 452 S.W.2d 437, 440 (Tex.1970).

            Simply stated, Appellants contend that
Mallory’s testimony was legally insufficient to constitute cause in fact.  Mallory testified that, unless a commercial
driver has no other option because of a disabled vehicle, a rig should never be
parked on the shoulder of a roadway because it is too dangerous for other
motorists.  He referred to various
handbooks and studies, including a 2002 study from the National Highway
Transportation Administration that concluded that commercial vehicles “park[ed]
on the shoulder of . . . roadways . . . can be a significant contributing
factor to the injury or fatal crash.” 
Tsatenawa testified that he parked on the shoulder because he was afraid
that unless he investigated why the check engine light had come on and why the
engine was overheating, he could have damaged the engine.  But he did not testify that the 18-wheeler
was disabled, and, in fact, it was idling as he sat in the cab.  Significantly, Mallory testified that
Tsatenawa did not need to stop because the engine was programmed to continue
running until a problem serious enough to threaten its operation arose, at
which point the engine would have begun shutting down slowly until it stopped
completely.  Mallory also opined that based
on the rig’s position after the accident, it was likely within the lane of
travel when Tsatenawa parked it because the force of the impact would have
moved the trailer toward the shoulder, not toward the line dividing the
shoulder from the roadway as Tsatenawa claimed. 
When shown pictures of the 18-wheeler’s position after the accident,
Tsatenawa acknowledged that a portion of the trailer protruded into the lane of
travel.

Mallory
explained to the jury that, pursuant to state and federal regulations, a
commercial driver has a legal obligation to place reflective warning devices
behind a vehicle parked on the shoulder of a roadway as quickly as possible,
but no later than ten minutes after parking. 
These devices are intended to warn motorists that a commercial vehicle
is parked ahead on the shoulder.  Had the
triangles been in place as required, Mallory believed the accident would have
not occurred because Elrod would have known where the rig was parked and would
have known not to swerve onto the shoulder when trying to avoid a collision
with the pick-up truck.  Elrod testified
that he did not see any triangles behind the 18-wheeler.

When
considered in the light most favorable to the verdict, and indulging every
reasonable inference that supports it, this evidence was legally sufficient to
have permitted reasonable and fair-minded jurors to conclude that the accident
was a natural and probable result of Tsatenawa’s acts and omissions and that,
therefore, his conduct was a substantial factor in causing the accident.

Appellants
next urge that, as a matter of law, the nexus between the rig and the resulting
accident was too attenuated to constitute cause in fact.  They posit that whether Tsatenawa was
negligent is irrelevant because his acts and omissions did no more than furnish
a condition that made the accident possible. 
In support, they direct us to Bell
v. Campbell, 434 S.W.2d 117 (Tex. 1968), Union Pump Co. v. Allbritton, 898 S.W.2d 773 (Tex. 1995), and Lear Siegler, cases in which legal
causation was absent because the defendants’ alleged negligence simply created
a condition that drew the plaintiffs to the scene of the accident.  Their reliance is misplaced.

In Bell, the court held that the drivers
whose collision caused a trailer attached to one of the vehicles to disengage
and overturn into the opposite lane were not liable for the injuries the
plaintiffs sustained when they were struck by another driver while attempting
to move the trailer.  434 S.W.2d at 118-19.  The court reasoned that the collision was too
attenuated to constitute legal cause.  Because
the forces generated by the collision had run their course and were complete when
the plaintiffs were injured, the collision did not actively contribute to the
injuries and merely created the condition for their occurrence.  Id.  In Lear
Siegler, the court determined that the manufacturer of a warning sign was
not liable for the injuries a government employee sustained when he was struck
by a sleeping driver while reconnecting loose wires in the sign.  819 S.W.2d at 472.  The court reasoned that the sign’s
malfunction was too remotely connected with the employee’s injuries to
constitute legal cause because the proper operation of the sign would have had
no effect on the sleeping driver.  Id.

Here,
Tsatenawa’s failure to comply with regulations specifically enacted to protect
motorists did not simply cause Matthew to be in the wrong place at the wrong
time; it was a substantial factor in bringing about the accident.  And in contrast to Bell and Lear Sigler, the
negligence of a third party – the driver of the white pick-up truck – did not disrupt
the nexus between Tsatenawa’s negligence and Matthew’s injuries.  The accident occurred immediately after Elrod
was cut off and in the location where the rig was parked.  Consequently, the position of the rig was not
geographically, temporally, or causally distant from Tsatenawa’s negligence.

Finally,
in Union Pump, the court concluded that
the manufacturer of a pump that ignited a fire at a chemical plant was not
liable for the injuries a plant employee sustained when she fell after she
repaired the valve once the fire had been extinguished.  898 S.W.2d at 774.  The court reasoned that the pump’s
malfunction was too remotely connected with the employee’s injuries to
constitute legal cause because the forces generated by the fire had come to
rest when the employee fell from the pipe rack wet from fire-extinguishing
liquid.  Id. at 776. This case is distinguishable because the dangerous
situation resulting in Matthew’s injuries never abated.  When Elrod collided with the 18-wheeler, Tsatenawa
had been parked in the dark in the same spot on the shoulder for at least ten
minutes.  In short, the forces generated
by Tsatenawa’s conduct had not “come to rest.”

Citing
to Reinicke v. Aeroground, Inc., 167
S.W.3d 385 (Tex.App.--Houston [14th Dist.] 2005, pet. denied)(plurality
opinion), Appellants also maintain
that, as a matter of law, the accident was caused by an independent and
intervening agency -- the truck that cut in front of Elrod.  There a driver veered off a highway for no
apparent reason and struck a vehicle parked on the side of the road, not in a
lane of travel.  167 S.W.3d at 389.  The court concluded that the mere parking of
the vehicle outside any lane of travel was not a cause in fact of the accident
because the other driver inexplicably left the roadway.  Id.
at 389, 392-93 (Fowler, J., concurring).  Such is not the case here.  Tsatenawa’s rig was not only partially parked
in a lane of travel, it was parked in the dark without warning devices designed
to alert motorists of its location.  And,
unlike the driver in Reinicke, Elrod’s acts were fully explainable and
directly related to the risk created.  Appellants
have failed to establish that, as a matter of law, Tsatenawa’s negligence was
not a cause in fact of Matthew’s injuries.

Factual Sufficiency

Appellants
next complain that the evidence is factually insufficient.  First, they posit that Elrod’s claim that the
white pick-up truck forced him off the road lacks physical evidence and
corroborating testimony.  Second, they
suggest that the data from Elrod’s airbag module refutes his claim that he was
driving a certain speed and applied the van’s brakes before colliding with the rig.  Those issues were determined by the finders
of fact in assessing the credibility of the witnesses and weighing all the evidence
before them.

The
overwhelming weight of the evidence supports the trial court’s judgment.  Although Appellants’ accident reconstruction
expert testified that nothing prevented Tsatenawa from parking on the shoulder,
he did not affirmatively opine that Tsatenawa was justified in having done so
given the circumstances.  In sharp contrast,
Mallory testified that Tsatenawa should have never parked on the shoulder
because he had no viable reason to do so and in so doing, he contributed
significantly to the accident.  Although
Tsatenawa testified that he parked completely within the shoulder, the veracity
of his testimony was undermined when Mallory testified that had the rig been
parked as Tsatenawa claimed, it would have moved closer to the shoulder and not
been found protruding into the lane of travel. 
According to Mallory, it was likely that a portion of the trailer was in
the lane of travel given its position after the accident.  There is no dispute that the trailer was in
the lane of travel following the accident. 
And although Tsatenawa testified that he placed the warning devices
behind the rig, the photographs taken at scene show neither reflectors nor debris
from reflectors that, had they been behind the rig, would have been smashed in
the collision.   Elrod testified that he did not see warning
devices.

When
considered and weighed, the overwhelming weight of the evidence in the record supports
the trial court’s judgment.  Conversely,
the evidence in the record that does not support the trial court’s judgment is
not so contrary as to render the judgment clearly wrong and unjust.  We thus conclude that Appellants have failed
to establish that the evidence supporting the jury’s finding that Tsatenawa’s
negligence was a cause in fact of Matthew’s injuries is factually insufficient.
 We overrule Issue One.

EXCLUSION
OF EVIDENCE

            In their second issue, Appellants
contend that the trial court erred by excluding the accident report by Department
of Public Safety Officer Stacie Martin.

Standard of Review

We
review a trial court’s decision to exclude evidence for an abuse of discretion.
 In
re J.P.B., 180 S.W.3d 570, 575 (Tex. 2005)(per curiam).  A trial court abuses its discretion if it acts
arbitrarily or unreasonably or without reference to any guiding rules and
principles.  Bowie Mem’l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002)(per
curiam), citing Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).  We may not reverse simply because we disagree
with the trial court’s decision; rather we may reverse only if the trial court
acted in an arbitrary or unreasonable manner.  Beaumont
Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991), citing Downer, 701 S.W.2d
at 242.

Even
if the trial court abused its discretion in excluding the evidence, reversal is
warranted “only if the error probably caused the rendition of an improper
judgment.”  See Bay Area Healthcare Grp., Ltd. v. McShane, 239 S.W.3d 231, 234
(Tex. 2007); see also Tex.R.App.P. 44.1(a)(1).  We review the entire record, and require the
complaining party to demonstrate that the judgment turns on the particular
evidence excluded.  Bay Area Healthcare Group, Ltd. v. McShane, 239 S.W.3d 231, 234
(Tex. 2007).  Thus, if erroneously
excluded evidence was crucial to a key issue, the error was likely harmful.  Reliance
Steel & Aluminum Co. v. Sevcik, 267 S.W.3d 867, 873 (Tex. 2008).  By contrast, exclusion is likely harmless if
the evidence was cumulative and not controlling on a material issue dispositive
of the case.  Id.; Corrales v. Dept. of
Family & Protective Services, 155 S.W.3d 478, 486 (Tex.App.--El Paso
2004, no pet.).

Applicable Law

            The exclusion of an accident report
is harmless error if the trier of fact is in as good a position as the law
enforcement official authoring the report to form an opinion as to the cause of
the accident and had no need for specialized knowledge to reach a
decision.  Pilgrim’s Pride Corp. v. Smoak, 134 S.W.3d 880, 893 (Tex.App.--Texarkana
2004, pet. denied); Zimmer v. Miller
Trucking Co., Inc., 743 F.2d 601, 604 (8th Cir. 1984).

Appellants
complain that the report was crucial in establishing that the rig was parked
legally on the shoulder and that Elrod was lying about the white pick-up truck
since there was no mention of the truck in the report.  Assuming without deciding that excluding the
report was error, we conclude that error, if any, was harmless.  The accident report was cumulative of other
evidence and its contents failed to establish that the verdict would have been
different had the jurors known of Martin’s observations.

The
accident report is cumulative because it contained nothing that the parties and
their experts did not testify about at trial and was based on the same
information to which all involved at trial had access, placing them ostensibly in
the same position Martin was when she viewed the scene and wrote the report.  Martin arrived at the scene after the
accident occurred.  Her report was based
on the same information that was used by the accident reconstruction experts to
form their opinions.  The jurors heard
Tsatenawa testify that he did not see the white pick-up truck pass him as the
collision occurred and that he parked the 18-wheeler completely within the
shoulder.  The jurors also studied the
pictures of the accident scene and the rig’s position on the highway is what
Martin observed when she wrote the report. 
That the jurors chose to discredit all or some of this evidence was well
within their province as fact finders.  They
also could have chosen to credit Elrod’s testimony that the white pick-up truck
caused him to swerve onto the shoulder and the Seales’ expert’s testimony that
the rig was parked partially in the lane of travel.

Because
the report was cumulative of other evidence and its contents fail to establish that
the jury’s verdict would have been different had the jurors known about
Martin’s observations in her report, its exclusion did not cause the rendition
of an improper judgment and was therefore harmless.  We overrule Issue Two and affirm the
trial court’s judgment.

 

 

October
31, 2012

                                                                        ANN
CRAWFORD MCCLURE, Chief Justice

 

Before
McClure, C.J., Chew, C.J. (Senior), and Gomez, Judge

Chew,
C.J. (Senior)(Sitting by Assignment)

Gomez,
Judge (Sitting by Assignment)