

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00270-CV

_____

BINION LONG AND 2L TRUCK & TRAILER, D/B/A 2L CUSTOM TRUCKS,
Appellants

V.

LEAH RIEDEL AND RODNEY A. RIEDEL, Appellees

On Appeal from the 43rd District Court
Parker County, Texas
Trial Court No. CV-20-0670

Before Kerr, Wallach, and Walker, JJ.
Opinion by Justice Wallach

**OPINION**

This is an appeal from a take-nothing summary judgment denying recovery to Binion Long and 2L Truck & Trailer, d/b/a 2L Custom Trucks (Appellants) on their claims against Leah Riedel and Rodney A. Riedel (Appellees) for personal injuries and property damages arising from a motor vehicle collision. Appellants alleged that Long was driving 2L's pickup southbound on Zion Hill Road, a two-lane road in rural Parker County, on February 19, 2019, around 6:50 P.M. It was dark and foggy. After cresting a hill and heading down, Long ran into the rear of a tractor-trailer rig parked in the right-hand lane of Zion Hill Road. Kenneth McIntosh, who was employed by SAIA (a freight delivery company), had parked the rig blocking the right-hand lane of traffic to make a delivery to Appellees, who owned the land adjacent to the parked rig. After McIntosh had parked his rig in the right lane, Mr. Riedel used his ranch vehicle to offload the delivery items from McIntosh's trailer and then drove back onto his property. At the time of the collision, McIntosh was alone inside his trailer, still parked on the highway.

Although SAIA and McIntosh were previously defendants in the case, they had been dismissed by the time of the Appellees' summary judgment hearing. Appellants alleged that Appellees had participated with McIntosh in creating and maintaining a dangerous obstruction in the right-hand lane of the highway, which created a duty of ordinary care to protect motorists from, or warn them of, the danger. Alternatively, Appellants alleged that Appellees were negligent per se in obstructing the roadway; that

2

they breached that duty; and that such conduct was a proximate cause of the collision and Appellants' ensuing injuries and damages. Appellants also alleged that such conduct amounted to gross negligence and sought exemplary damages.

Appellees filed no-evidence and traditional partial motions for summary judgment challenging each element of Appellants' causes of action and contended that McIntosh's conduct was an intervening cause of the occurrence. Appellants filed a response and, after conducting a hearing, the trial court granted Appellees' motions for partial summary judgment without stating the basis for its ruling and rendered judgment that Appellants take nothing from Appellees.[1] This appeal ensued. We will affirm.

---

[1]By order dated July 3, 2023, the trial court "granted" Appellees' "Motion for Summary Judgment." The order did not specify which motion and did not have any decretal language denying Appellants' right to recovery. By letter dated April 5, 2024, this court notified the parties that we were concerned about our jurisdiction since there appeared to be no final appealable judgment due to the absence of decretal language. *See Naaman v. Grider*, 126 S.W.3d 73, 74 (Tex. 2003); *Shetewy v. Mediation Inst. of N. Tex., LLC*, 624 S.W.3d 285, 288 (Tex. App.—Fort Worth 2021, no pet.); *In re Wilmington Tr., Nat'l Ass'n*, 524 S.W.3d 790, 792–93 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding); *see also Sunday Canyon Prop. Owners Ass'n v. Borman*, No. 07-23-00195-CV, 2024 WL 851513, at *3 (Tex. App.—Amarillo Feb. 28, 2024, pet. denied) (mem. op.). On April 9, 2024, the trial court signed a Final Judgment, which vacated its July 3, 2023 order, granted Appellees' no-evidence and traditional motions for summary judgment, decreed that Appellants take nothing, and stated that the judgment was a final appealable judgment, all other claims and parties having been disposed of by other non-suits or dismissals. The judgment did not set forth the specific grounds upon which the court granted the summary judgments.

## I.    Factual Background

### A.    Relevant facts raised by Appellants

Appellants' summary judgment evidence raised the following relevant facts. First, Mrs. Riedel testified in a deposition that on the night of the incident she and her husband drove their ranch vehicle to the side of Zion Hill Road to wait on McIntosh to arrive with their delivery. They flashed the headlights on their vehicle to signal to McIntosh where they were parked. McIntosh then stopped his rig in the lane of travel "about eight, ten feet from where" Appellees were sitting in their ranch vehicle. Appellees then drove their vehicle onto the lane of travel, backed it up to the parked trailer, and offloaded their items that were inside.

Mr. Riedel's testimony was consistent with his wife's testimony above. Mr. Riedel also testified that he got out of his vehicle, walked across a lane of travel, and spoke to McIntosh, telling him that he needed to move the rig "off the road a little more" because it would be "a lot safer" to unload the freight. McIntosh replied something to the effect of "we'll go ahead and get [the freight]" unloaded. Mr. Riedel followed McIntosh to the back of the rig and then returned to his vehicle, drove it onto the southbound lane of Zion Hill Road, and backed it up to the trailer, which was still parked in the southbound lane of travel. Mr. Riedel then assisted McIntosh with transferring the delivery items from the trailer to his vehicle. While standing in the southbound lane of travel, Mr. Riedel signed an invoice for the delivery, got back into his vehicle, and pulled back onto his property.

According to McIntosh's testimony, McIntosh spoke with Mrs. Riedel by phone before the delivery. She told him that he would not be able to get his "fully-equipped" rig onto their property or get it turned around once on her property and to look for Mr. Riedel in the ranch vehicle when he arrived.

McIntosh further testified that when he arrived, Mr. Riedel flashed his vehicle's lights to signal McIntosh where to bring the delivery. McIntosh then drove adjacent to Mr. Riedel's location and parked the rig in the lane of travel so he could complete the delivery. McIntosh testified that for residential deliveries like this one, the decision of where to park is up to the "driver and/or the customer." He denied that Mr. Riedel asked him to move the rig farther to the right to make it safer, contrary to Mr. Riedel's testimony.

Finally, Appellants point to our previous opinion affirming McIntosh's conviction for violating Texas Penal Code Section 42.03 for obstructing the lane of traffic in this incident. *See McIntosh v. State*, No. 02-21-00135-CR, 2022 WL 3097286, at *1 (Tex. App.—Fort Worth Aug. 4, 2022, no pet.) (mem. op., not designated for publication). In particular, Appellants point to the testimony from an accident reconstruction expert, Lee Jackson, who opined that the rig's parking location constituted an obstruction of the highway.

**B.    Relevant facts raised by Appellees**

Appellees raised additional relevant facts in their summary judgment evidence. First, according to the deposition testimony of the corporate representative of SAIA,

5

McIntosh's employer, the decision on where to park the truck rested with McIntosh, a professional driver. McIntosh admitted in a deposition that he had decided where to park the rig when he set the brakes after parking it. McIntosh also told the investigating police officer that he had intentionally parked the truck in the lane to make the delivery.

During McIntosh's criminal trial, Mrs. Riedel testified that she had talked with a representative of SAIA on the day of delivery. She expressed concern that it could be difficult for the tractor-trailer to get in and out of her driveway due to the weather. SAIA's representative assured her that McIntosh was a professional driver, and it would be his decision on how to carry out the delivery.

Mrs. Riedel's deposition and criminal trial testimony revealed that she spoke with McIntosh three times prior to his arrival and explained the difficulties that he would face in making the delivery. She told McIntosh that if he drove onto their property, he would have a hard time turning around. She further told him that if he was unable to get into the driveway or concrete pad, there was no other safe place for him to park and to discontinue to the delivery. Additionally, she testified that she told him that parking on the highway presented difficulties with muddy ditches, a creek, and "idiot drivers" coming down the hill. She was not telling him where to park; she was just telling him of the problems so he could decide how to make the delivery as the professional truck driver. When McIntosh parked the rig, he was in the right lane just off the center line to the right.

Finally, Mr. Riedel testified in his deposition that after McIntosh parked the rig, Mr. Riedel approached the tractor and spoke to McIntosh as he exited the cab. Mr. Riedel told McIntosh that he needed to pull the rig off the road more so it would be safer to unload. McIntosh did not move the rig.

## II.     Standards of Review

We review a summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). When, as here, the trial court does not specify the grounds for its ruling, a summary judgment must be affirmed if any of the grounds on which judgment was sought are meritorious. *Id.* Evidence is considered in the light most favorable to the nonmovant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *Id.*; *see Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005).

When a court grants both traditional and no-evidence summary judgment motions, the appellate court first considers the no-evidence motion. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). A properly filed no-evidence motion shifts the burden to the nonmovant to present evidence raising a genuine issue of material fact supporting each element contested in the no-evidence motion. *Wal-Mart Stores, Inc. v. Xerox State & Local Sols., Inc.*, 663 S.W.3d 569, 576 (Tex. 2023). If the nonmovant fails to meet its burden under the no-evidence motion, there is no need to address the challenge to the traditional motion as it necessarily fails. *Merriman*, 407 S.W.3d at 248.

To defeat a no-evidence motion, the nonmovant must produce evidence raising a genuine issue of material fact as to the challenged elements. *See Ridgway*, 135 S.W.3d at 600. When a no-evidence motion for summary judgment is combined with a traditional motion for summary judgment, the evidence attached to the traditional motion may be considered in determining the existence of a fact issue. *City of Springtown v. Ashenfelter*, No. 02-23-00204-CV, 2024 WL 1792380, at *6 (Tex. App.—Fort Worth April 25, 2024, pet. denied) (mem. op.); *Hawes v. Link Ministries, Inc.*, No. 07-18-00407-CV, 2020 WL 4723176, at *3 (Tex. App.—Amarillo Aug. 13, 2020, pet. denied) (mem. op.). The nonmovant may rely on evidence attached to a movant's combined traditional and no-evidence summary judgment motion, but the nonmovant bears the burden to specifically point out to the trial court which evidence raises a fact issue on the challenged elements. *Villa v. Gebetsberger*, No. 01-21-00529-CV, 2022 WL 3649368, at *4 (Tex. App.—Houston [1st Dist.] Aug. 25, 2022, no pet.) (mem. op.); *Dyer v. Accredited Home Lenders, Inc.*, No. 02-11-00046-CV, 2012 WL 335858, at *3 (Tex. App.—Fort Worth Feb. 2, 2012, pet. denied) (mem. op.).

A genuine issue of material fact exists if the evidence "'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)). The evidence does not create an issue of material fact if it is "so weak as to do no more than create a mere surmise or suspicion"

that the fact exists. *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014) (quoting *Ridgway*, 135 S.W.3d at 601). A no-evidence challenge will be sustained when

> (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.

*King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Merrell Dow Pharms., Inc.*, 953 S.W.2d at 711).

Whether one party owes a duty of care to another is a question of law for the court to decide based on the facts surrounding the occurrence in question. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Bell v. Cain*, No. 06-23-00060-CV, 2024 WL 1203896, at *3 (Tex. App.—Texarkana Mar. 21, 2024, no pet.) (mem. op.). Where a party files a no-evidence motion for summary judgment based on no duty, it is error not to grant the motion when the facts raised by the nonmovant do not give rise to a duty of care. *Bell*, 2024 WL 1203896, at *7.

A defendant is entitled to traditional summary judgment if it conclusively negates at least one essential element of the plaintiff's cause of action, showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Hillis v. McCall*, 602 S.W.3d 436, 439–40 (Tex. 2020); *Harkins v. Wal-Mart Stores Tex., LLC*, No. 02-21-00201-CV, 2022 WL 3453548, at *4 (Tex. App.—Fort Worth Aug. 18, 2022, pet. denied) (mem. op. on reh'g). This includes negating the duty element in a tort claim.

*Taylor v. Goodwill Indus. of Fort Worth*, No. 02-23-00328-CV, 2024 WL 1100872, at *1 (Tex. App.—Fort Worth Mar. 14, 2024, no pet.) (mem. op.).

## III. Analysis

Appellants present two issues. First, did the trial court err by granting Appellees' no-evidence motion for summary judgment? Under this issue, Appellants contend that they offered sufficient evidence to defeat the no-evidence summary judgment for their negligence, negligence per se, and gross negligence causes of action. Second, did the trial court err in granting Appellees' traditional motion for summary judgment? Under this issue, Appellants argue that the Appellees failed to establish (1) that they owed no duty to the Appellants; (2) that McIntosh alone created the dangerous condition on the road; (3) that Appellants are seeking to hold Appellees responsible for McIntosh's conduct rather their own; and (4) a superseding cause. We will overrule Appellants' first issue and affirm the trial court's judgment in granting the no-evidence motion for summary judgment.

### A. No Common Law Duty of Care

In their no-evidence motion, Appellees challenged the existence of fact issues creating a duty of care owed by them to Appellants, the breach of the alleged duty of care alleged by the Appellants, and the absence of a causal relationship between the alleged breach and the Appellants' injuries and damages. The burden then shifted to Appellants to present evidence raising a genuine issue of material fact supporting each element contested in the motion. *Wal-Mart Stores, Inc.*, 663 S.W.3d at 576.

"The threshold inquiry in a negligence case is whether the defendant owes a legal duty to the plaintiff." *Centeq Realty, Inc.*, 899 S.W.2d at 197. The existence of duty is a question of law for the court to decide from the facts presented. *Id.* When the existence of a legal duty is called into question, the reviewing court performs a de novo review to determine from the facts of the case if a duty existed. *See City of McAllen v. De La Garza*, 898 S.W.2d 809, 810 (Tex. 1995); *In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994) (op. on reh'g).

In this case, we are presented with differing theories about duty. Appellants contend that Appellees contributed to the parking of the rig on the public roadway, thereby creating a dangerous condition, which would give rise to a duty to use reasonable care to prevent an unreasonable risk of harm to other motorists. *United Rental N. Am., Inc. v. Evans*, 668 S.W.3d 627, 638–40 (Tex. 2023); *Garza v. Pullen*, No. 04-21-00201-CV, 2022 WL 2821084, at *3 (Tex. App.—San Antonio July 20, 2022, no pet.) (mem. op.); *Gator Gone Safety Pilots v. Holt*, 622 S.W.3d 524, 536 (Tex. App.—Houston [14th Dist.] 2021, no pet.); *Reinicke v. Aeroground, Inc.*, 167 S.W.3d 385, 387 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (plurality opinion); *Tex. Dep't of Transp. v. Fontenot*, 151 S.W.3d 753, 760 (Tex. App.—Beaumont 2004, pet. denied). On the other hand, Appellees, owners of the land adjacent to the roadway where the wreck occurred, contend that this case is governed by principles of premises liability and that they owed no duty to Long as a motorist on the roadway or to ensure his safety against dangerous acts of a third party, i.e., McIntosh. *HNMC, Inc. v. Chan*, 683 S.W.3d 373, 380 (Tex.

2024). We hold that there is no evidence in the record that would give rise to a duty of ordinary care by the Riedels to Appellants under either theory.

In their brief, Appellants relied on *Reinicke*, *Holt*, and *Fontenot*, and added *Evans* and *Garza* in their reply brief. We will review each case. *Reinicke* is more detrimental than helpful to Appellants. In *Reinicke*, the driver of the defendant Aeroground tractor-trailer rig ran out of gas and parked his rig on the shoulder of the highway. 167 S.W.3d at 387. Aeroground sent another driver to the scene with another tractor. *Id.* After the first tractor had been pulled away, but before the trailer was moved, the decedent drove her vehicle into the trailer, careened out of control and hit another rig and dividing wall, killing her and her children. *Id.* Her husband sued Aeroground on a premises liability theory and negligent activity theory. *Id.* The appellate court noted that "[a] person who creates a dangerous condition on premises, including a public highway, can be liable for injuries it causes even though he is not in formal control of the premises at the time of the injury." *Id.* (first citing *City of Denton v. Page*, 701 S.W.2d 831, 835 (Tex. 1986); then citing *Strakos v. Gehring*, 360 S.W.2d 787, 795–96 (Tex. 1962)). After reviewing *Strakos* and *City of Denton*, we believe that the *Reinicke* court's statement was oversimplified.

In *Strakos*, Harris County had acquired the right of way to expand a road being incorporated in the farm-to-market road system. 360 S.W.2d at 788. Gehring had contracted with the county to relocate fencing along both sides of the road as part of this project. *Id.* Hubbard was a dirt subcontractor for Austin Road Company who had contracted with the State to resurface and widen the road. *Id.* at 789. Relocation of the

12

fences left unfilled holes in the ground. *Id.* Neither Gehring nor Hubbard filled the empty post holes or warned of their existence before Strakos was injured when he fell into one of the holes. *Id.* at 788–789. The Supreme Court affirmed the trial court's judgment for Strakos, as modified for reasons related to a contribution issue. *Id.* at 788.

In discussing its *Strakos* opinion in *City of Denton,* the Court specifically noted that it was the contractors' right to control the roadway stemming from contracts with the roadway owners that created the duty to make it safe from the work. *City of Denton,* 701 S.W.2d at 834. Of course, in the instant case, Appellees had no contractual or other right to control the highway where the incident occurred.

Regarding Appellants' negligent activity theory, we note that *Reinicke* dealt with the actions and duty of the company employing the driver of the rig, not a third-party non-driver like the Appellees. Thus, it does not speak to the duty issue directly before us. Further, as summarized by the *Reinicke* court,

> Reinicke's first alleged ground of negligence, causing the trailer to be placed in a dangerous position along the highway, occurred while driving and parking the rig. That activity had ended when the tractor ran out of gas, well before the accident occurred. Therefore, to whatever extent Aeroground's negligence in running out of gas and positioning the rig on the shoulder created a dangerous condition, the negligent activity charge submitted in this case *will not support a finding of liability for common law negligence or premise liability* for failing to: (1) exercise reasonable care in putting the trailer there; (2) warn of that condition; or (3) make it reasonably safe.

*Reinicke,* 167 S.W.3d at 388 (emphasis added).

Like in *Reinicke*, the collision in this case occurred not only after McIntosh had initially parked the rig, but also after Mr. Riedel had offloaded his delivery items from the rig and driven back to his property, leaving McIntosh alone in the trailer. Thus, by analogy, neither the original parking of the rig nor the offloading of the merchandise in the highway would support a finding of common law negligence or premises liability here.

*Fontenot* is another road repair contractor case. 151 S.W.3d at 757. Deavers had a contract with the highway department to perform road repair work in a designated section of highway and, as part of the contract, had a duty to place safety signage in the construction area. *Id.* After a rainstorm created water puddles near, but not in, the construction zone, Fontenot lost control of his car when he hit a puddle and was injured in the accident. *Id.* Fontenot alleged that Deavers had a duty under the contract to warn motorists of water puddling in the area or, alternatively, had a common law duty to warn of the puddling dangers because it was involved in construction in the general area and was aware of the danger. *Id.* at 760.

After concluding that the puddling area was not in the contract work zone, thereby relieving Deavers of any contractual duty, the court addressed the common law duty question. *Id.* at 759–60. The court acknowledged the rule that a party who negligently creates a dangerous condition on a highway must act to prevent foreseeable injury to others, but rejected the application of that principle to Deavers because Deavers did not create the dangerous condition and had not assumed the responsibility

14

of putting signs on that portion of the roadway, which was outside of its contracted area. *Id.* at 760. Thus, *Deavers* is not instructive for our situation.

*Holt* dealt with a situation involving transporting an oversized load on a public thoroughfare. 622 S.W.3d at 529. The defendants were companies who had contracted to provide safety processes to protect motorists and those involved in the movement of the oversized load. *Id.* at 530. As such, they contractually assumed a duty to provide safety for others on the roadway. *Id.* at 538–39. We find this case inapposite.

In *Evans*, Davis was killed when a piece of equipment carried on a flatbed trailer struck an overpass and the falling debris crushed Davis's vehicle, killing him. 668 S.W.3d at 631. The equipment being transported was owned by United Rentals and was being transported from one of their locations to another. *Id.* at 632. United Rentals hired a third party to transport the equipment. *Id.* It was an oversized load, which should have required a special permit from the Department of Motor Vehicles, but no permit was obtained by anyone. In short, there were a number of miscues by United Rental's employees, as well as by the third-party contractors, which resulted in the load being improperly loaded and transported, causing the load to hit the bridge and the resulting carnage. *Id.* at 633.

Davis's survivors sued several defendants but proceeded to trial only against United Rentals. *Id.* at 631. United Rentals contended that it owed no duty to Davis. *Id.* at 638. The court rejected this argument. *Id.* at 638–39. The court held that United Rentals was aware of the substantial risks posed to motorists from oversized loads not

15

properly loaded and transported. *Id.* By putting such a load on the highway, it was therefore taking an affirmative act creating a danger on a public highway for which it could be held responsible if it was negligent. *Id.*

We do not find *Evans* to be instructive in this case. First, *Evans* represents an application of the well-established rule that parties who participate in loading and transporting oversized or potentially dangerous equipment or materials on highways have a duty to exercise ordinary care. *See Bujnoch v. Nat'l Oilwell Varco, L.P.*, 542 S.W.3d 2, 9–10 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (party loading truck and failing to verify it was secure owed negligence duty notwithstanding that different company owed duty to secure load under federal regulations). This case does not involve transporting an oversized load on the highway. Second, like in *Evans*, at the time of this occurrence, Appellees did not control the rig on the highway. The only vehicle Appellees placed on the highway, their ranch vehicle, was off the road and away from the scene when the accident happened. The danger on the road at the time of the collision was from McIntosh's rig, which was under the control of its driver, McIntosh.

Finally, we will review the *Garza* case. Pullen was employed by America Midwest Transportation, LLC as a truck driver. *Garza*, 2022 WL 2821084, at *1. He parked his company tractor-trailer rig on the outside shoulder of Highway 281. *Id.* There was no evidence that Pullen or America Midwest owned, possessed, or controlled the roadway where the collision occurred. Garza approached the rig from behind and struck it when he lost control of his vehicle. *Id.*

16

Garza sued Pullen and his employer under general negligence and premises liability theories. *Id.* The trial court granted the defendants' summary judgment motions. *Id.* The appellate court reversed the ordinary negligence summary judgment.[2] *Id.* at \*4, \*5. Because federal law required Pullen to put out warning devices and turn on his flashers, the evidence showed that he failed to use ordinary care, and that such failure was a proximate cause of the collision. *Id.* at \*4. While this holding may have supported Appellants' claim against McIntosh, it does not address Appellants' claims of duty as to Appellees.

Neither the parties' briefing nor our research has yielded a case precisely on point regarding the question of whether Appellees owed Appellants a duty of ordinary care. However, there are three concepts that guide us in holding that Appellees owed no duty

---

[2]The *Garza* court affirmed the take nothing summary judgment on Garza's premises liability claim. 2022 WL 2821084, at \*6. The court noted that "[c]ontrol over the dangerous condition, absent control of the property where the dangerous condition exists, will not suffice to establish that a claim sounds in premises liability rather than general negligence." *Id.* (citing *Arredondo v. Techserv Consulting & Training, Ltd.*, 567 S.W.3d 383, 393 (Tex. App.—San Antonio 2018), *rev'd in part on other grounds sub nom. AEP Tex. Cent. Co. v. Arredondo*, 612 S.W.3d 289 (Tex. 2020)). Because there was no evidence that Pullen and America Midwest had ownership, possession, or control of the highway, as opposed to the rig, the court held that there was no premises liability claim supported by the evidence. *Id.* Appellants assert on appeal that they have not raised a premises liability claim, and thus this part of *Garza* is not relevant to our analysis. But to the extent that Appellants' petition did allege a premises liability claim, this holding supports Appellees' argument here. Although Appellees were alleged to have control over the rig by virtue of making suggestions on where to park it, they had no ownership, possession, or control of the highway where the rig was parked. Thus, this holding supports the absence of a premises liability claim against Appellees.

17

of ordinary care to Appellants: (1) SAIA was an independent contractor, (2) analogous cases support no common law duty of care, and (3) Appellees—as property owners—owed no duty of care to persons on an adjacent public roadway.

## 1.     Duty of Care for Independent Contractors

First, Appellees hired SAIA, an independent contractor, to deliver the merchandise in question, and McIntosh was SAIA's professional driver. A person who contracts with an independent contractor owes the same duties as a premises owner owes to an independent contractor's employees. *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 & n.1 (Tex. 1999). Generally, an owner or contractor does not owe a duty to an independent contractor's employees to ensure that they safely perform their work. *Id.*; *Gonzales v. Ramirez*, 463 S.W.3d 499, 506 (Tex. 2015). A contractor generally is not liable for the acts of the independent contractor and its employees. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007). "A contractor can request information and reports about the work" without having assumed control of the work. *Gonzales*, 463 S.W.3d at 506. Likewise, a contractor does not assume responsibility for the independent contractor's conduct by making suggestions or recommendations that need not be necessarily followed or by prescribing alterations and deviations to the work. *Elliott-Williams Co. v. Diaz*, 9 S.W.3d 801, 804 (Tex. 1999) (citing Restatement (Second) of Torts § 414 cmt. c (1965)). Owners and contractors generally have no duty to ensure that employees of an independent contractor perform their duties in a safe manner. *Islas*, 228 S.W.3d at 651; *Diaz*, 9 S.W.3d at 803; *Acosta v. Starr Produce Co.*,

18

No. 04-00-00623-CV, 2001 WL 984833, at *3 (Tex. App.—San Antonio Aug. 29, 2001, no pet.) (not designated for publication). Merely having or exercising a general right to recommend a safe manner for the independent contractor's employees to perform their work is insufficient to subject a premises owner or contractor to liability. *Koch*, 11 S.W.3d at 155; *see also Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 607 (Tex. 2002). An owner or contractor who requires a subcontractor to use safety procedures is not responsible for the subcontractor's failure to use them. *Islas*, 228 S.W.3d at 652.

Viewing the evidence in a light most favorable to Appellants, the communications between Appellees, SAIA, and McIntosh merely involved the exchange of information between Appellees as property owners and SAIA and McIntosh as independent contractors regarding time and place for delivery and issues affecting the safe delivery of the merchandise. Although suggestions were made by Appellees regarding how and where to safely offload the merchandise, and where Appellees would meet McIntosh for the delivery, the simple fact is that McIntosh controlled the rig. He made the decision to set the brake to park the rig where he stopped it, and he controlled access to the trailer. Even though McIntosh testified that the decision of where to park his rig when making residential deliveries belonged to the "driver and/or the customer," this "and/or" statement is not dispositive. Here, it is uncontroverted that McIntosh parked the rig and set the brake and controlled access to the trailer.

Nothing that Appellees did constituted an exercise of control of the method, manner, or details of McIntosh's work. To place a duty of ordinary care on Appellees to do the things requested by Appellants would require them to exercise control over persons and instrumentalities outside of their right to control. We decline to do so.

### 2. Common Law Duty of Care

Second, there are cases that support the absence of a common law duty of ordinary care to Appellants under these circumstances. While Appellants want to view the question of duty without regard to Appellees' status as owners of the property adjacent to the incident, we do not believe that is feasible. Ownership and activity related to the Appellees' property gave rise to the series of events in question, and their status as owners of the adjacent property is intertwined with their duties, if any, to motorists on the adjacent roadway. We examine the situations that could create a common law duty of care.

We begin with *Naumann v. Windsor Gypsum, Inc.*, 749 S.W.2d 189 (Tex. App.—San Antonio 1988, writ denied). The facts and allegations were succinctly stated in two paragraphs:

> On the night of October 18, 1985, a vehicle driven by Laura Naumann collided with an eighteen-wheeled tractor-trailer driven by Silas Marsh, an employee of Builder's Transport, Inc. The tractor-trailer had just been loaded with sheetrock at Windsor's plant near McQueeny, Texas. Marsh left the Windsor plant and turned right on Cypress Ridge Road where he then proceeded north 264 feet to a stop sign at F.M. 78, a two-laned highway running east and west. The accident occurred as Marsh proceeded to make a right turn onto F.M. 78. To effectuate the turn with the tractor-trailer, he was forced to block both the east and west bound

20

lanes of the highway. Laura Naumann, driving west on F.M. 78, struck the tractor-trailer as it was making its turn.

> . . . .

> Naumann's cause of action is based on Windsor's alleged negligence in designing its plant in a manner that forces tractor-trailers exiting its property to block both lanes of F.M. 78 as they enter it from Cypress Ridge Road, thereby creating a hazard to motorists on F.M. 78, and that Windsor was negligent in failing to provide warning devices, adequate lighting or guards to direct traffic at the junction of Cypress Ridge and F.M. 78.

*Id.* at 190. The trial court granted Windsor's motion for summary judgment because there was no issue of fact regarding a duty owed by Windsor and the court of appeals affirmed. *Id.* at 190, 192. In particular, after noting that the truck drivers were independent contractors over whom Windsor had no control, the court noted that

> Plaintiffs argue that because Windsor designed the layout of its plant, instructed truck drivers which exit to use and knew that they blocked both lanes of traffic when entering F.M. 78, it had a duty to make use of the alternative means of exit from its property or to warn highway users of the dangerous exit. We do not agree. Although Windsor knew of the propensity of truck drivers to block both lanes when turning east on F.M. 78, it had every right to expect them to exercise due care and to enter the highway safely. An owner or occupier of property is not an insurer of the safety of travelers on an adjacent highway and is not required to provide against the acts of third persons.

*Id.* at 192.

*Naumann*'s holding is instructive to the present case. Just as in *Naumann*, Appellees as landowners had an independent contractor delivering a load to their property. The driver exercised control over where to stop the rig and controlled access to the trailer for offloading the merchandise. Just as the *Naumann* court noted that a

21

potentially dangerous situation exists every time a tractor-trailer rig makes a right turn blocking an intersection of two-laned roads, a potentially dangerous condition exists whenever a tractor-trailer rig is parked blocking one lane of a two-laned road. *See id.* Like Windsor, Appellees did not control the driver's actions and were not insurers of the safety of travelers on the roadway adjacent to their property. As such, Appellees were not required to give warnings to motorists using the road. *See id.*; *see also Huebotter v. Diamond Shamrock Refin. Co.*, No. 04-99-00243-CV, 1999 WL 1244422, at \*2–\*3 (Tex. App.—San Antonio Dec. 22, 1999, no pet.) (not designated for publication); *Ray v. Ronnie Moore Trucking*, Civil Action No. DR-12-CV-17-AM-VRG, 2012 WL 13032960, at \*1, \*5 (W.D. Tex. 2012).

Finally, our Supreme Court has recently addressed the circumstances which might give rise to duties of a landowner to travelers on adjacent roadways. *HNMC*, 683 S.W.3d at 382. Chan was crossing the public street across from HNMC's property to its parking garage when she was hit by a vehicle exiting from HNMC's property onto the adjacent roadway. First, the court assessed HNMC's duty to Chan as a user of the roadway. The court held that HNMC owed no duty to Chan as a user of the roadway. *Id.* In so holding, the court affirmed the well-established rule that a property owner owes no duty to ensure the safety of a person who suffers injury on an adjacent public roadway or to ensure that person's safety against dangerous acts of a third party absent control of the circumstances. *Id.* The court also noted that generally no person is under a duty to control the conduct of another. *Id.*

22

Applying these principles to this case, Appellees had no right to control the conduct of their independent contractor driver who made the actual decision to park the rig in the roadway and unload it. Likewise, Appellees were under no duty to control Appellant's conduct in driving the rig. So, regardless of whether McIntosh, Long, or both were negligent in causing the occurrence, Appellees owed no duty to control either of them.

The second situation that might give rise to a duty is when a person agrees or contracts to make safe a known, dangerous condition of real property. *Id.* The court noted that a person who does not own, occupy, or control a premises may owe a duty of care if the person undertakes to make the premises safe for others (creating a duty sounding in ordinary negligence, not premises liability). *Id.* This theory has not been raised in this case.

The third situation is the "the duty of an 'owner or occupant of premises abutting a highway' to refrain from 'jeopardiz[ing] or endanger[ing] the safety of persons using the highway as a means of passage or travel.'" *Id.* at 383 (quoting *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981)). However, the court noted that this situation does not address conditions outside the land adjacent to the roadway and would not cover conditions on the roadway. *Id.* Therefore, it would not apply to the conditions on the roadway here.

23

### 3. Duty of Care for Property Owners

Lastly, the court held that a property owner or occupier who assumes control over adjacent property assumes a duty of reasonable care to maintain the safety of the property over which they have assumed control. *Id.* at 384 (citing *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 324 (Tex. 1993)). Actual control is the key to the determination. *Id.*; *Holland v. Mem'l Hermann Health Sys.*, 570 S.W.3d 887, 897 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Unlike in *HNMC*, where HNMC had assumed control over portions of the right of way giving rise to a duty to "address any dangerous conditions in those limited areas of the right-of-way where it actually exercised control," Appellees did not exercise actual control over the roadway where the rig was stopped. *HNMC*, 683 S.W.3d at 384. Even if it could be argued that Appellees had exercised control of the roadway where their ranch vehicle was operating while the unloading process was underway, that activity had ceased at the time of the collision. Thus, we find no basis under this last theory to impose a duty on Appellees.

Finding no evidence to support a legal duty from Appellees to Appellants under the common law under either a general negligence theory or premises liability theory, we overrule Appellants' first issue as to their common law claims for damages arising from negligence.

### B. No Negligence Per Se Liability

Negligence per se is a tort concept whereby the civil courts adopt a legislatively imposed standard of conduct as defining the conduct of a reasonably prudent person. The unexcused violation of a statute

24

constitutes negligence as a matter of law if such statute was designed to prevent injury to the class of persons to which the injured party belongs.

*Moughon v. Wolf*, 576 S.W.2d 603, 604 (Tex. 1978). A statutory violation must be a proximate cause of the injuries or damages claimed. *Id.* Proximate cause consists of two elements, (1) a breach of duty that is a cause in fact of the harm and (2) a reasonably foreseeable injury. *Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex. 2016). "Cause in fact" exists if the negligent act or omission was a "substantial factor" in bringing about the harm at issue, and absent the negligent act or omission ("but for" the act or omission), the harm would not have occurred. *Id.* A negligent act or omission is not a "substantial factor" in causing the harm as a matter of law if it merely creates a condition that makes the harm possible. *Id.*; *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 800 (Tex. 2004) ("Our precedents establish that merely creating the condition that makes harm possible falls short as a matter of law of satisfying the substantial factor test."); *Bell v. Campbell*, 434 S.W.2d 117, 120–22 (Tex. 1968).

Appellants contend that Appellees violated Texas Penal Code Section 42.03, constituting negligence per se, which proximately caused the collision. The provision applicable at the time of the accident provided,

> (a) *A person commits an offense if, without legal privilege or authority, he intentionally, knowingly, or recklessly*: (1) *obstructs a highway*, street, sidewalk, railway, waterway, elevator, aisle, hallway, entrance, or exit to which the public or a substantial group of the public has access, or any other place used for the passage of persons, vehicles, or conveyances, regardless of the means of creating the obstruction *and whether the obstruction arises from his acts alone or from his acts and the acts of others.*

25

*See* Tex. Penal Code Ann. § 42.03(a)(1) (the Act) (emphases added). McIntosh was convicted of violating the Act, and we affirmed his conviction. *McIntosh*, 2022 WL 3097286, at *1. Appellants contend that Appellees also "obstructed" the highway. To "obstruct" means to "render impassable or to render passage unreasonably inconvenient or hazardous." Tex. Penal Code Ann. § 42.03(b); *McIntosh*, 2022 WL 3097286, at *1. So, we are called upon to decide if there is evidence that Appellees "obstructed" the highway and if such "obstruction" was a proximate cause of the collision.

The authorities cited by both sides on this issue are of little guidance. Appellees contend that the Act is not a proper basis for negligence per se because it incorporates the common law standard of the reasonably prudent man. *Miranda-Lara v. Rebert*, No. 09-18-00325-CV, 2020 WL 5099968, at *4 (Tex. App.—Beaumont, Aug. 31, 2020, no pet.) (mem. op.); *Babiy v. Kelley*, No. 05-17-01122-CV, 2019 WL 1198392, at *3 (Tex. App.—Dallas, Mar. 14, 2019, no pet) (mem. op.); *Agee v. Hartford Acc. & Ind. Co.*, Civil Action No. 3:22-CV-1697-G, 2023 WL 4595195, at *5 (N.D. Tex. July 18, 2023). Indeed, as noted above, the Act incorporates a reasonableness standard in its definition of "obstruct". *See* Tex. Penal Code Ann. § 42.03(a)(1).

Appellees argue that no case has used the Act as a basis for imposing negligence per se. Appellants acknowledge such but point to a 1904 case where a predecessor statute was used to support negligence per se. *See Shippers' Compress & Warehouse Co. v. Davidson*, 80 S.W. 1032, 1033 (Tex. App.—San Antonio 1904, writ ref'd). While this

case supports the proposition that a company whose employees directly block a street causing an accident leading to injury and death can constitute negligence per se, we find the case inapposite to our case. *See id.* First, it did not deal with persons like Appellees who were not directly in control of the equipment causing the obstruction. *Id.* Second, it dealt with an obstruction that was actively involved in causing the collision versus one that had existed but was no longer present when the event occurred. *Id.* However, we need not decide the question of whether the Act is a proper basis for a negligence per se claim because, assuming it is, the facts of this case do not support its application as such.

There are two general means by which Appellees arguably obstructed the roadway; first, by influencing McIntosh to park his rig where he did and, second, by unloading the merchandise from the trailer while it was parked in the southbound lane.

Regarding the first, it is undisputed that McIntosh was employed by an independent contractor, that he drove the rig to the point where it was parked, and that he set the brake to park it there. As discussed above, Appellees provided information to him and his employer about the circumstances and risks of making the delivery, but such does not negate the independent nature of McIntosh's conduct. *See Hoechst Celanese Corp. v. Compton*, 899 S.W.2d 215, 228 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (holding that the acts of independent contractors (off duty police officers) in controlling traffic on a highway outside the exit/entrance to a business's property does not give rise to liability under the Act for the property owner who contracted with them

27

to control the traffic). Since Appellees did not personally physically obstruct the roadway in the initial parking of the rig, and McIntosh was an independent contractor, we hold that there is no evidence that Appellees violated the Act in the initial parking of the rig.

The second potential means of Appellees obstructing the highway was by using their ranch vehicle to move to the rear of the trailer, park it, and offload the delivery items onto the ranch vehicle. There is evidence that the ranch vehicle, during the offloading process, was partially blocking the highway in conjunction with McIntosh's rig. For purposes of our analysis, we will assume that such constituted some evidence of a violation of the Act. However, it is undisputed that the collision occurred after the offloading was finished, and after Appellees drove their ranch vehicle back onto their property. It was then that Appellees noticed Long's vehicle coming over the hilltop and starting its descent into the ultimate collision. At that point, McIntosh's rig was the only obstruction on the highway. Under these circumstances, we hold that Appellees' prior parking of the ranch vehicle and unloading of the trailer did nothing more than, at most, create a condition which made the harm possible. Therefore, as a matter of law, it was not a proximate cause of the occurrence. *Bell*, 434 S.W.2d at 122; *Moore Freight Serv., Inc. v. Munoz*, 545 S.W.3d 85, 97 (Tex. App.—El Paso 2017, pet. denied); *Reinicke*, 167 S.W.3d at 388. We overrule Appellants' issue regarding the trial court's granting of the no-evidence summary judgment on their claims based on negligence per se.

## IV.     Conclusion

Having found no evidence that would create a common law duty of care from Appellees to Appellants, and overruling their issues in that regard, and having found no evidence of a violation of the Act that would constitute a proximate cause of Appellants' injuries and damages, we affirm the judgment of the trial court. We need not address Appellants' remaining arguments as our holding is dispositive of the appeal. *See* Tex. R. App. P. 47.1; *Pecan Valley Mental Health Mental Retardation Region Operating as Pecan Valley Ctrs. for Behav. & Develop. Healthcare v. Doe*, 678 S.W.3d 577, 594 (Tex. App.—Eastland 2023, pet. denied) (holding that in the absence of negligence there can be no gross negligence).

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  February 27, 2025

29